NUMBER 13-99-220-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


VERA D. PICKETT, INDIVIDUALLY, AS THE

INDEPENDENT EXECUTRIX OF THE ESTATE OF

SEVIL LAFETTE PICKETT, AND AS CO-TRUSTEE OF

THE SEVIL LAFETTE PICKETT RESIDUARY TRUST,

ALBERT McWATTERS, CO-TRUSTEE OF THE SEVIL

LAFETTE PICKETT RESIDUARY TRUST, AND THE

SEVIL LAFETTE PICKETT RESIDUARY TRUST, Appellants,


v.



RALPH GERALD KEENE, Appellee.

____________________________________________________________________


On appeal from the 94th District Court of Nueces County,

Texas.

____________________________________________________________________




O P I N I O N



Before Justices Hinojosa, Rodriguez, and Chavez(1)


Opinion by Justice Hinojosa



 A jury found that appellee, Ralph Gerald Keene, owned an
undivided one-half interest in the Spanish Village Cottages Motel (the
"motel") in Port Aransas and awarded him attorney's fees. Appellants,
Vera D. Pickett, individually, as the independent executrix of the estate
of Sevil Lafette Pickett, and as co-trustee of the Sevil Lafette Pickett
Residuary Trust, Albert McWatters, co-trustee of the Sevil Lafette
Pickett Residuary Trust, and the Sevil Lafette Pickett Residuary Trust,
contend the trial court erred: (1) in failing to disregard the jury's finding
that Sevil and Vera Pickett orally agreed to convey a one-half interest in
the motel to appellee because his claims are barred by the statute of
frauds; (2) in failing to disregard the jury's finding that an exception
existed that took the agreement out of the statute of frauds because the
evidence is legally and factually insufficient to support the finding; (3)
in failing to submit appellants' defense of limitations to the jury because
appellee's claim is barred by limitations; (4) in awarding attorney's fees;
and (5) in awarding appellee an undivided one-half interest in a
laundromat located on motel property. We modify the judgment and,
as modified, affirm.

A. Background


 Because appellants assert the evidence is factually and legally
insufficient to support the jury's finding that an exception to the statute
of frauds exists, we will examine the evidence in detail. It is undisputed
that property records list the Picketts as the owners of the motel since
1966, and that the Picketts paid all taxes due on the property and
maintained insurance on the property at all relevant times. The
following are summaries of the testimony presented at trial.

1. Testimony of Ralph Gerald Keene


 Appellee testified that in February 1966, he was a twelve-year
veteran of the National Guard, and that he was stationed in San
Antonio. He was married to Janet Pickett Keene, daughter of Sevil and
Vera Pickett. His salary was about $8500 per year, plus benefits that
included medical and life insurance, 30 days of paid vacation and 30
days of paid sick leave per year, uniforms and commissary privileges. 
Janet earned approximately $3500 per year, working part-time for a
physician. They owned their own home and made mortgage payments
of about $80 per month. Mr. Pickett was a high school coach and Mrs.
Pickett was a teacher in Marlow, Oklahoma.

 According to appellee, in February 1966, he and Janet entered into
an oral agreement with the Picketts. The four were to be joint owners
of the Spanish Village Cottages Motel, which was for sale for $120,000. 
The Keenes were to contribute what they could toward the $20,000
down payment. Appellee borrowed against his own life insurance
policy and a life insurance policy he held on his mother. He raised
almost $2,000 and sent the money to the Picketts at their home in
Marlow, Oklahoma via registered mail.(2) The Picketts borrowed money
for the rest of the down payment. The Keenes and Picketts further
agreed that the deed would be in the Picketts' name. They also agreed
that the Keenes would quit their jobs in San Antonio, sell their home,
move into the manager's unit at the motel, and run the motel for a
salary of $400 per month with no benefits, except one week of vacation
per year. They also agreed that when the loans taken out to procure the
down payment had been paid off, the Picketts would deed a one-third
interest in the motel to the Keenes. When the loan for the remaining
$100,000 of the purchase price was paid off from motel profits, the
Picketts would deed the Keenes a one-half interest in the motel, and
when the Picketts decided they no longer wanted to be involved with
the motel, they would either deed the rest of their interest to the Keenes
or devise their interest in the motel to the Keenes in their wills.

 When the down payment loans were paid off in 1971, the Keenes
and Picketts agreed to wait until the mortgage was paid off before
preparing a deed showing the Keenes' ownership interest. When the
mortgage was paid off in 1985, Sevil Pickett told the Keenes that if the
official transfer was made at that time, it would cost approximately
$70,000 in taxes. The Keenes then decided to wait and receive all of
the motel by either devise or deed, as agreed in 1966. A laundry was
later built on part of the property. Appellee managed both the motel
and the laundry.

 The Keenes made almost $5,000 in profit from the 1966 sale of
their San Antonio home. They used part of this money to improve the
manager's quarters at the motel. They remodeled extensively, and
added a bedroom, a bathroom, a dressing room, a carport, a patio and
two privacy fences. The Keenes also maintained insurance on their
private quarters. After Hurricane Celia badly damaged the motel, the
Picketts obtained a disaster-relief loan. Although appellee was listed as
the contractor for the repairs, he was not paid for his work. In the
1980's, the Picketts informed the Keenes that the H.E.B. grocery store
chain wanted to buy the property for one million dollars, which the
Picketts said they would split with the Keenes. After discussing the
offer, the Picketts and Keenes decided to reject the offer.

 Mr. Pickett's physical and mental health began to fail. In February,
1994, while appellee was on an overnight trip to Laredo, Norma Coyle,(3)
got into a "mishap" with employees and customers of the laundry. 
Coyle "accused a winter [resident] of using one of her machines so she
proceeded to take all the soapy clothes out and throw them at the
employees as well as the customers in the laundromat." Norma then
fired all the employees and had the laundry's utilities cut off. She told
appellee that if he "did not go along with her side of the story, that she
would shut the whole place down, the cottages as well." Mrs. Pickett
told appellee that only the gas to the laundry should be shut off so that
repairs to the gas line could be made. Mrs. Pickett also told him that if
the motel utilities were cut off, that he should use motel proceeds to
have them turned back on. However, the utilities were never turned
back on because once the electricity was cut off, the entire motel had
to be brought up to the current code.

 The next day, Coyle delivered a handwritten, notarized letter from
Mrs. Pickett to appellee, dated February 28, 1994, which stated:

Mr. Ralph G. Keene


 We are unable to carry on our businesses--Spanish
Village Motel at 134 N. Alister, Country Clean Washateria @
210 N. Alister, because of our illnesses.


 We have appointed Norma D. Coyle to represent us.


 We shall no longer need a manager.


 Please relinquish our keys, re[c]ords, money, and other
possessions belonging to us as owners.


 As soon as we receive these, we shall pay you your
March, 1994 salary and ask that you vacate the premises by
March 31, 1994.


The letter was signed by Vera D. Pickett, "for Sevil L. Pickett, Owners." 
When appellee asked Mrs. Pickett about the letter, she said that the
only part of the business that she had shut down was the laundry
because it needed gas line repairs. She told appellee that the laundry
would reopen when the repairs were complete.

 Appellee did not vacate the premises, and still lives at the motel. 
He later learned that he had been taken out of the Picketts' wills, and
that he would no longer receive the motel under their wills.


2. Testimony of Mary Ann Pickett


 Mary Ann Pickett testified that she is Janet Keene and Norma
Coyle's sister. In 1966, she lived with the Keenes in San Antonio while
she attended Trinity University. Mary Ann was present when the
Picketts and the Keenes agreed to purchase the motel. Mr. Pickett
insisted that Mary Ann listen to the agreement "because it was going
to be a family business and [Mary Ann] was part of the family." The
Keenes were to pay part of the down payment and manage the property
in return for part ownership. The Keenes would be deeded a one-third
interest in the property when the loans for the down payment were paid
off, and a one-half interest when the mortgage was paid off. Mr.
Pickett "was in favor of that because he thought ownership made you
work harder." Mary Ann does not remember any discussion at that
time as to what would happen to the other half of the property when
the Picketts died or stopped working. She does remember seeing a
cashier's check for a large amount of money in the Keene's home in
1966. Janet told her it was for part of the down payment on the motel
property.

 The Picketts told Mary Ann about the one million dollar offer for
the property. They told her that if they sold the property, the proceeds
would be split between the Picketts and the Keenes. Mary Ann used
to work for a certified public account ("CPA"). The CPA did some
research and found that $70,000 in taxes would have to be paid if the
Picketts deeded one-half of the property to the Keenes. However, the
taxes could be avoided if the property was left to the Keenes in the
Picketts' wills. Mary Ann "believe[d] at that time it was decided that
[the Picketts] would convey it in the will."

 There were ongoing discussions about the ownership of the
property. Once, Mary Ann overheard one of the Keenes ask Mr. Pickett 

for something in writing . . . [a]bout the Spanish Village, to
protect them, and he sort of got upset and he said, "You
know, my word is good. You know, my word is good. I told
you I would do this and I will do it."


The Picketts never complained about appellee, and their relationship
with him "seemed like a very positive one." Appellee helped the
Picketts when they needed to go to the doctor or pick up medicine. 
When Mr. Picket became ill, he would get disoriented and demand to
be taken home when he was already at home. Mrs. Pickett would call
appellee, who would come over and take Mr. Pickett for a short drive,
then return him home. Mr. Pickett would be fine after that.

 The Keenes divorced in 1992, but this had no effect on the
agreement regarding the property. The Keenes were still to receive a
one-half interest. During Christmas, 1993, Mrs. Pickett told Mary Ann
that she was leaving the motel to the Keenes, the laundry to Norma and
Mary Ann, and "that each one of us was getting a house." Mrs. Pickett
also said that "at that time she was ready to go ahead and deed the
motel over to them and just let [the Keenes] sort of fight it out."

 In 1994, several family members called Mary Ann and told her that
Norma had shut down the laundry and motel. They asked her if she
could go to Port Aransas to find out what was happening. When Mary
Ann arrived, Mrs. Pickett told her that the laundry was closed for
several weeks while Mr. Pickett was in the hospital, that no one had
been fired, and that she was going to reopen the laundry. Then Norma
intervened and began yelling. The elder Picketts got very upset and
agitated. 

 As far as Mary Ann ever heard, the Picketts considered appellee
to be a part owner of the property, not just an employee. Her mother
recently told her that if her testimony in this case could be interpreted
as contesting her father's will, Mary Ann would be disinherited. Norma
prevented Mary Ann from seeing her father, Mr. Pickett, after the
lawsuit was filed. Mr. Pickett died in 1995.

3. Testimony of Vera Pickett


 Vera Pickett testified that the Keenes did not pay any portion of the
down payment, and that appellee was just a motel employee. Mrs.
Pickett and her husband never considered the Keenes to be part owners
of the motel, and they always intended to leave their property equally
to their three daughters, not to appellee. Mrs. Pickett denied that H.E.B.
had ever made an offer for the property, and said that if it had, she and
Mr. Pickett planned to split the proceeds between their three daughters.

4. Documentary Evidence


 Seven different wills of Sevil and Vera Pickett were introduced into
evidence. The Picketts' 1990 and 1992 wills provide that the property
would be left to the Keenes. However, the March 1994 wills and Vera's
1996 will do not contain this devise.


B. Standard of Review


 When we review the legal sufficiency of the evidence, we must
consider all of the record evidence in a light most favorable to the party
in whose favor the verdict has been rendered, and indulge in that
party's favor every reasonable inference deducible from the evidence. 
Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998); Hines v. Comm'n for Lawyer Discipline, 28
S.W.3d 697, 701 (Tex. App.--Corpus Christi 2000, no pet.). A legal
sufficiency point must and may only be sustained when the record
discloses: (1) a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; and (4) the evidence
established conclusively the opposite of the vital fact. Juliette Fowler
Homes, Inc. v. Welch Assoc., 793 S.W.2d 660, 666 n.9 (Tex. 1990). If
there is more than a scintilla of evidence to support the finding, the legal
sufficiency challenge fails. Formosa Plastics, 960 S.W.2d at 48;
Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987). When the evidence
offered to prove a vital fact is so weak as to do no more than create a
mere surmise or suspicion of its existence, the evidence is not more
than a scintilla and, in legal effect, is no evidence. Kindred v. Con-Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). The test for the application
of this no evidence/scintilla rule is: if reasonable minds cannot differ
from the conclusion, then the evidence offered to support the existence
of a vital fact lacks probative force, and it will be held to be the legal
equivalent of no evidence. Id.

 When we review the factual sufficiency of the evidence, we
consider, weigh and examine all of the evidence which supports or
undermines the finding of the trier of fact. Plas-Tex, Inc. v. United
States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We review the
evidence, keeping in mind that it is the fact finder's role, not ours, to
judge the credibility of the evidence, to assign the weight to be given to
testimony, and to resolve inconsistencies within or conflicts among the
witnesses' testimony. Corpus Christi Teachers' Credit Union v.
Hernandez, 814 S.W.2d 195, 197 (Tex. App.--San Antonio 1991, no
writ). We then overturn findings only if they are so against the great
weight and preponderance of the evidence as to be clearly wrong and
unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

C. The Statute of Frauds


 In their first issue, appellants contend the trial court erred "in
failing to disregard the jury's answer to Question No. 1 because an oral
agreement to transfer land by will or devise cannot support the
judgment in this case, and without a written agreement, recovery is
barred by the Statute of Frauds." Appellants specifically assert that the
agreement to pass the property by devise occurred in 1985, when the
property was paid off, not in 1966, and is thus governed by section
59A(a) of the probate code, which states:

A contract to make a will or devise, or not to revoke a will or
devise, if executed or entered into after September 1, 1979,
can be established only by provisions of a will stating that a
contract does exist and stating the material provisions of the
contract.


Tex. Prob. Code Ann. §59A(a) (Vernon 1980).

 This suit was filed in 1994, shortly after the Picketts informed
appellee that they were no longer able to operate the motel and laundry. 
Mr. Pickett died in 1995, leaving a March 1994 will that devised his
interest in the property to a residuary trust, the income of which
benefits Mrs. Pickett for her life, and upon her death is to be distributed
equally among his three daughters.

 Question No. 1 asked the jury:

Do you find that Sevil and Vera Pickett orally agreed to
convey one-half of the Spanish Village Cottages located at
North Alister St., Port Aransas, Texas to Gerald Keene? 


The jury answered "Yes."

 According to appellee, the parties agreed in 1966 that the Picketts
would give the entire property to the Keenes either: (1) by deed when
they no longer wanted to be involved in the motel business, or (2) by
devise. Because the jury found the Picketts had agreed to convey one-half of the property to appellee, it is clear the jury determined the
Picketts did not intend to leave the property to the Keenes by devise.

 Because Mrs. Pickett is still alive, only Mr. Pickett's one-half
interest in the property could have passed by devise. Thus, if the jury
believed that the Picketts had intended to leave the property to the
Keenes by devise, it would have found that appellee was entitled only
to a one-fourth interest in the property.(4) Because the jury found that
appellee was entitled to a one-half interest in the property, it must have
determined that the Picketts intended to convey the property to Gerald
and Janet Keene when they no longer wanted to be involved in the
motel business.

 Accordingly, we hold that section 59A(a) of the probate code does
not apply and that the evidence is sufficient to support the jury's
finding. Appellants' first issue is overruled.

 In their second issue, appellants contend the trial court erred in: 

failing to disregard the jury's answers to Questions 2, 3 and
4, because there was no evidence to support their
submission. Appellee failed, as a matter of law, to establish
the exceptions required to relieve him of the requirements of
the Statute of Frauds. Alternatively, there was factually
insufficient evidence to support the jury's answers to
Questions 2, 3 and 4.


 The jury was asked and answered the following questions:

Question No. 2: Did Gerald Keene take possession in 1966
as a part owner of the Spanish Village Cottages as a result
of the agreement, if any, referred to in Question No. 1?


Answer: Yes 


Question No. 3: Did Gerald Keene pay part of the consideration for
the purchase of the Spanish Village Cottages?


Answer: Yes 



Question No. 4: Did Gerald Keene provide permanent and
valuable improvements to the Spanish Village Cottages out of his
own funds or funds from which he had a partial entitlement?


Answer: Yes 


 Generally, a contract for the sale of real estate must be in writing
and signed by the party charged with the promise. Tex. Bus. & Comm.
Code Ann. § 26.01 (Vernon 1987). However, an exception exists when
the purchaser of real estate under an oral contract: (1) pays
consideration, (2) takes possession of the property, and (3) makes
permanent and valuable improvements on the property with the
consent of the seller, or, without such improvements, other facts are
shown that would make the transaction a fraud on the purchaser if the
oral contract was not enforced. Boyert v. Tauber, 834 S.W.2d 60, 63
(Tex. 1992); Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116
(Tex. 1921). These steps are seen as sufficient evidence of the
agreement because they provide affirmative corroboration of the
agreement by both parties to the agreement. Boyert, 834 S.W.2d at 63;
Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257, 260 (Tex. 1937);
Hooks, 229 S.W. at 1117.

 We conclude the evidence in the record is sufficient to satisfy the
first and third requirements. Appellee testified that he and his wife paid
a portion of the down payment on the motel. Mary Ann Pickett also
remembered seeing the cashier's check that the Keene's gave the
Picketts for the down payment. Appellee also testified that he made
valuable and permanent improvements to the property, financed by the
profit he made from the sale of his San Antonio home.

 As to the second requirement of possession, appellee testified he
moved into private quarters at the motel in 1966, and lived there and
ran the motel for over twenty-two years at a low salary, with no health
insurance, retirement plan, or other benefits. He also maintained
insurance on his private quarters and performed major repair work on
the motel after a hurricane, without recompense. 

 "[T]he possession required to relieve a parol transfer from the
statute of frauds must evidence a 'right of control which pertains to the
status of owner' or be 'possession which in itself attests the fact that
such possession is intended as a delivery under the parol gift.'" Sharp
v. Stacy, 535 S.W.2d 345, 350 (Tex. 1976) (citing Dawson v.
Tomlinson, 150 Tex. 451, 242 S.W.2d 191, 194 (Tex. 1951)). However,
exclusive physical possession is not an absolute requirement in order
to relieve a parol transfer of land from the statute of frauds; "[s]uch a
requirement would create arbitrary results in difficult cases and
frustrate the equitable rule of Hooks v. Bridgewater where
'nonenforcement of the contract -- or the enforcement of the statute --
would, itself, plainly amount to a fraud.'" Sharp, 535 S.W.2d at 350
(citing Hooks, 229 S.W. at 1116).

 We conclude the evidence is sufficient to support the jury's finding
of possession. Appellants' second issue is overruled.

D. Statute of Limitations


 In their third issue, appellants contend appellee's claim is barred
by limitations, and, "[a]lternatively, appellants are entitled to a new trial
because the trial court erred in failing to submit appellants' statute of
limitations defense because it was pleaded and evidence was
introduced to support its submission." Appellants assert the 1966
agreement was breached in 1971, when the down payment loans were
repaid and the Picketts did not deed a one-third interest to the Keenes,
and the applicable statute of limitations ran four years later.(5)

 Generally, a cause of action accrues, and the statute of limitations
begins to run, when facts come into existence that authorize a claimant
to seek a judicial remedy. Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 902 S.W.2d 507, 514 (Tex. 1998); Murray v. San Jacinto
Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990). However, the statute
of limitations on a claim for breach of contract begins to run only when
the injured party elects to treat the contract as terminated. F.D. Stella
Prods. Co. v. Scott, 875 S.W.2d 462, 464-65 (Tex. App.--Austin 1994,
no writ). In the instant case, the injury of which appellee complains,
and for which he sought a judicial remedy, was the retirement from the
motel business of the Picketts, as evidenced by their February 28, 1994
letter, without deeding him the one-half interest promised to him. 
Appellee has never complained of the first breach of the agreement. In
fact, appellee testified the parties agreed in 1971 to modify the original
agreement, thus waiving the requirement that the Picketts deed the
Keenes a one-third interest upon repayment of the down payment
loans. Similarly, in 1985 when the remaining loans were paid off, the
parties agreed not to transfer title at that time. However, the Picketts
clearly repudiated the original agreement by retiring from the motel
business without deeding a one-half interest to appellee. Their letter of
February 28, 1994, terminating appellee's employment and ordering
him off the premises made clear their intent never to comply with the
agreement. Appellee filed this suit a few weeks later, well within the
statute of limitations. Appellants' third issue is overruled.

E. The Laundromat


 In their sixth issue, appellants claim the trial court awarded
appellee an undivided one-half interest in the laundromat adjacent to
the motel, as well as a one-half interest in the motel. The final
judgment states:

 It is therefore ORDERED, ADJUDGED AND DECREED
that Plaintiff recover an undivided one-half interest in the
Spanish Village Cottages located at North Alister Street, Port
Aransas, Nueces County, Texas, legally described as follows:


The Spanish Village Addition to the Town of Port
Aransas, Nueces County, Texas, being a
Resubdivision of a portion of Survey No. 1 and all
of Survey Nos. 2 and 3 in Block 74 of the State
Land Surveys on Mustang Island.

 The record reflects that appellee disclaimed any interest in the
laundromat and presented no evidence concerning the ownership of the
laundromat. The trial court did not submit any questions to the jury
concerning the laundromat. In his brief, appellee admits he has no
interest in the laundromat and claims the property description used in
the judgment was taken from an appraisal report furnished by
appellants which is not part of the record.

 In a supplemental record, the parties stipulate that the legal
description of the property on which the laundromat is located is:

That part of Lot One (1), Block Seventy-Four (74), STATE
LAND SURVEYS, MUSTANG ISLAND, not included in
Spanish Village, SAVE AND EXCEPT that portion heretofore
conveyed by E. W. Jamison, et al. to Nueces County, Texas,
by deed dated April 16, 1957, recorded in Volume 773, Page
401, Deed Records of Nueces County, Texas.


The parties further stipulate that a more complete legal description of
the property on which the motel is located is:

All of Spanish Village, an addition to the City of Port Aransas,
Texas, consisting of Lots 1-A and One (1) through Eighteen
(18), both inclusive, Block One (1) and Lots One (1) through
Eight (8), both inclusive, Block Two (2), according to map or
plat recorded in Volume 10, Page 56, Map Records of
Nueces County, Texas.


 We conclude the trial court's judgment should be modified to
reflect that appellee has no interest in the property on which the
laundromat is located. Appellants' sixth issue is sustained.

F. Attorney's Fees


 In their fourth issue, appellants contend the trial court erred in
awarding attorney's fees "because appellee's contract claim is invalid
and unsuccessful."

 We have overruled appellants' first, second, and third issues
contesting the validity of the contract. Accordingly, we overrule
appellants' fourth issue. See Tex. Civ Prac. & Rem. Code Ann. § 38.001
(Vernon 1997) (attorney's fees are recoverable in suit for claim under an
oral or written contract).

 In their fifth issue, appellants contend the trial court erred by
granting appellee an unconditional award of attorney's fees in the event
of an appeal.

 The trial court's judgment grants appellee $49,000.00 for
attorney's fees incurred during trial. In addition, the trial court's
judgment states: 

in the event of an appeal to the appropriate Court of Appeals
an additional attorney's fee in the amount of $7,000.00; in
the event the Court of Appeals upholds the verdict in the
Plaintiff's favor and the Defendants apply for a Writ of Error
to the Supreme Court of Texas an additional attorney's fee of
$5,000.00; in the event the Writ of Error is granted by the
Supreme Court of Texas an additional attorney's fee of
$3,000.00 but with automatic remittitur in the event of no
appeal or limited appeal. . . ."


A trial court may not grant a party an unconditional award of appellate
attorney's fees. Texas Farmers Ins. Co. v. Cameron, 24 S.W.3d 386,
400 (Tex. App.--Dallas 2000, pet. denied); Weynand v. Weynand, 990
S.W.2d 843, 847 (Tex. App.--Dallas 1999, pet. denied). To do so would
penalize a party for pursuing a meritorious appeal. Cameron, 24 S.W.3d
at 401; Weynand, 990 S.W.2d at 847. An appellee is not entitled to an
award of appellate attorney's fees for that portion of fees attributable to
an unsuccessful defense of the case. Goldman v. Alkek, 850 S.W.2d
568, 578 (Tex. App.--Corpus Christi 1993, no writ) (op. on mot. for
reh'g); Southwestern Bell Tel. Co. v. Vollmer, 805 S.W.2d 825, 834
(Tex. App.--Corpus Christi 1991, writ denied), overruled on other
grounds, Houston Lighting & Power Co. v. Auchan USA, Inc., 995
S.W.2d 668, 675 (Tex. 1998). 



1. Appeal to Court of Appeals


 In this case, appellee has prevailed on all issues except one, which
he conceded before the trial court and this Court -- that he has no
interest in the laundromat or the property on which the laundromat is
located. Through no fault of appellee, the legal description in the trial
court's judgment included the property on which the laundromat is
located. We are modifying the trial court's judgment to correct this
error, and affirming the judgment as modified.

 An error in awarding unconditional attorney's fees is harmless if
the appellant has been ultimately unsuccessful in its appeal. Cameron,
24 S.W.3d at 401; Humble Nat'l Bank v. DCV, Inc., 933 S.W.2d 224,
226 (Tex. App.--Houston [14th Dist.] 1996, writ denied). Because
appellants have been unsuccessful in their appeal to this Court, we
conclude that any error in the trial court's award of attorney's fees in
the event of an appeal to this Court is harmless. We, therefore, overrule
that part of appellants' fifth issue relating to the unconditional award of
attorney's fees in the amount of $7,000.00 in the event of an appeal to
the court of appeals.

2. Appeal to Supreme Court


 However, the trial court's award of attorney's fees to appellee of
$5,000.00 if appellants file a "Writ of Error"(6) with the supreme court,
and an additional award of $3,000 if a "Writ of Error" is granted by the
supreme court, "but with automatic remittitur in the event of no appeal
or limited appeal," is not conditioned upon the success of an appeal to
that court.

 We conclude the trial court's judgment should be modified to
reflect that appellee is entitled to such attorney's fees only if appellants'
appeal is unsuccessful before the Supreme Court of Texas. See
Cameron, 24 S.W.3d at 401. We, therefore, sustain that part of
appellants' fifth issue relating to the unconditional award of attorney's
fees in the event of an appeal to the Supreme Court of Texas.

G. Modification of Trial Court's Judgment


1. Laundromat Property


 We modify the judgment of the trial court to reflect that Ralph
Gerald Keene has no interest in the following described real property
and the laundromat located on said property:

That part of Lot One (1), Block Seventy-Four (74), STATE
LAND SURVEYS, MUSTANG ISLAND, not included in
Spanish Village, SAVE AND EXCEPT that portion heretofore
conveyed by E. W. Jamison, et al. to Nueces County, Texas,
by deed dated April 16, 1957, recorded in Volume 773, Page
401, Deed Records of Nueces County, Texas.


2. Motel Property


 We modify the judgment of the trial court to reflect that Ralph
Gerald Keene shall recover an undivided one-half interest in the Spanish
Village Cottages located at North Alister Street, Port Aransas, Nueces
County, Texas, more fully described as:

All of Spanish Village, an addition to the City of Port Aransas,
Texas, consisting of Lots 1-A and One (1) through Eighteen
(18), both inclusive, Block One (1) and Lots One (1) through
Eight (8), both inclusive, Block Two (2), according to map or
plat recorded in Volume 10, Page 56, Map Records of
Nueces County, Texas.


3. Attorney's Fees -- If Petition for Review is Denied


 We modify the judgment of the trial court to reflect that in the
event appellants file a petition for review with the Supreme Court of
Texas, and the supreme court denies the petition, then Ralph Gerald
Keene shall recover additional attorney's fees in the amount of
$5,000.00.

4. Attorney's Fees -- If Petition for Review is Granted


 We modify the judgment of the trial court to reflect that in the
event appellants file a petition for review with the Supreme Court of
Texas and the court grants the petition, but the appeal is ultimately
unsuccessful, then Ralph Gerald Keene shall recover additional
attorney's fees in the amount of $8,000.00.(7)

H. Conclusion


 As modified, the trial court's judgment is affirmed.


 FEDERICO G. HINOJOSA

 Justice


Publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

12th day of April, 2001.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of
the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. The envelope in which appellee mailed the certified check was entered into
evidence. Appellee obtained it from his father-in-law. At one time, appellee had a
receipt for the purchase of the cashier's check. Janet Keene gave the receipt to Mrs.
Pickett, who said that it reflected the Keenes' "investment" in the motel.
3. Norma Coyle is Janet Keene's sister, and also the Picketts' daughter.
4. Janet Keene would be entitled to a one-fourth interest and Mrs. Pickett would
have the remaining one-half interest.
5. The statute of limitations for breach of contract is four years. Tex. Civ. Prac.
& Rem. Code Ann. § 16.004 (Vernon 1986).
6. "The Supreme Court may review a court of appeals' final judgment on a
petition for review addressed to the 'The Supreme Court of Texas'. . . . The petition
for review procedure replaces the writ of error procedure." Tex. R. App. P. 53.
7. $5,000.00 + $3,000.00 = $8,000.00.