CAPSTONE HEALTHCARE EQUIPMENT SERVICES, INC., by and through its Assignee, HEALTH SYSTEM GROUP, L.L.C., Appellant,

v.

QUALITY HOME HEALTH CARE, INC. and Donna Vansickle, Appellees.

No. 05–08–00526–CV.

Court of Appeals of Texas, Dallas.

Aug. 4, 2009.

John R. Teakell, Dallas, TX, for Appellant.

T. Scott Smith, Smith and Smith, Sherman, TX, for Appellee.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice RICHTER.

Capstone Healthcare Equipment Services, Inc., by and through its assignee, Health System Group, L.L.C. (Capstone) appeals two summary judgments rendered in favor of Quality Home Health Care, Inc. (QHHC) and Donna Vansickle. We affirm the trial court's summary judgment orders.

### Background

On April 21, 2000, Vansickle agreed to sell her interest in QHHC to Capstone. Pursuant to the Stock Purchase Agreement (SPA), Vansickle was to receive a

total of $2.6 million for 1000 shares of QHHC stock. Capstone was required to purchase 654 shares of stock from Vansickle for $1.6 million and QHHC was required to redeem 346 shares of stock from Vansickle for $900,000. Capstone agreed to purchase Vansickle's shares by paying $700,000 at closing for 269 shares and executing a promissory note to pay $1,000,000 over a seven year period for the remaining 385 shares. Vansickle agreed to transfer a proportionate share of the remaining stock as Capstone made each required payment. To redeem the remaining 346 shares from Vansickle, QHHC agreed to pay $500,000 on May 1, 2000 and $400,000 on June 1, 2000. After the second payment, Vansickle was required to surrender the shares to QHHC.

Capstone had difficulty meeting its obligations under the SPA and the promissory note and, on July 12, 2000, the parties agreed to modify both documents. The modified documents acknowledged Vansickle had not been paid the entire redemption payment and changed Capstone's payment schedule under the promissory note. Even with the modifications, by the fall of 2000 each party was accusing the other of breaching the agreement. In September 2000, Vansickle notified Capstone it was in default of the SPA and that she intended to sell the QHHC stock at a public sale. In November and December of 2000, Capstone claimed Vansickle had breached the agreement by failing to transfer QHHC stock to Capstone and by improperly handling QHHC's accounts. Capstone threatened legal action if Vansickle did not transfer the shares of QHHC stock.

The parties engaged in negotiations attempting to resolve their disputes. However, Capstone continued to have difficulties in 2001 making the payments due under the promissory note. In April 2002,

Vansickle sold the QHHC stock at a public sale.

On November 18, 2005, appellant filed suit against QHHC and Vansickle alleging breach of contract and fraud. QHHC and Vansickle filed a motion for summary judgment on the ground Capstone's claims were barred by limitations. Shortly before the hearing on the motion, Capstone amended its petition to include claims for quasi-contract, unjust enrichment, and wrongful foreclosure. The trial court granted summary judgment on Capstone's breach of contract and fraud claims on the ground the claims were barred by limitations. QHHC and Vansickle filed a second motion for summary judgment on Capstone's remaining claims. The trial court granted the second motion, concluding the quasi-contract and unjust enrichment claims were barred by limitations and summary judgment on the wrongful foreclosure claim should be granted on unspecified grounds.

### Adequacy of Briefing

■ On appeal, Capstone frames its issue as "Did the trial court reversibly err in granting Defendants' motion for summary judgment based on limitations?" Capstone, however, briefs only whether the trial court erred by granting summary judgment on the breach of contract claim. Capstone presents no argument or authority in support of any contention the trial court erred by granting summary judgment on any other claim and, in fact, admits it is "focus[ing] here primarily on the first motion concerning its contract claim."

■ The law is well established that to present an issue to this Court, a party's brief shall contain, among other things, a concise, nonargumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contentions made with ap-

propriate citations to authorities and the record. Tex.R.App. P. 38.1; *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex.App.-Dallas 2001, pet. denied). Bare assertions of error, without argument or authority, waive error. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (appellate court has discretion to waive point of error due to inadequate briefing).

In its brief, Capstone offered no argument, authority, or analysis of any error committed by the trial court by granting summary judgment on Capstone's claims for fraud, quasi-contract, unjust enrichment, and wrongful foreclosure. Therefore, Capstone has waived any error by the trial court in granting summary judgment on those claims. *See* Tex.R.App. P. 38.1(h); *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 766 (Tex.App.-Fort Worth 2003, pet. denied).

### Breach of Contract

We review summary judgments de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex.2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2007). A party requesting a traditional summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A party moving for summary judgment on a statute of limitations affirmative defense must conclusively prove that defense. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *Jones v. Blume*, 196 S.W.3d 440, 445 (Tex.App.-Dallas 2006, pet. denied). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Tri-*

*ton Oil & Gas v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982); *Jones*, 196 S.W.3d at 445. If the movant establishes that limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue to avoid limitations. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the non-movant's favor. *Shah*, 67 S.W.3d at 842; *Nixon*, 690 S.W.2d at 548–49.

■■ As a general rule, the statute of limitations for a breach of contract action is four years from the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (Vernon 2002); *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006) (per curiam). A breach of contract claim accrues when the contract is breached. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex.2006); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). A breach of contract occurs when a party fails or refuses to do something he has promised to do. *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

■ In its petition, relied upon by Vansickle and QHHC in support of their motion for summary judgment, Capstone alleged "[Vansickle and QHHC] have engaged in a persistent course of conduct since April 21, 2001 to attempt to cause [Capstone] to default on the agreement in order to avoid the sale or transfer of the stock of QHHC to [Capstone] pursuant to the 'Stock Purchase Agreement.'" Capstone further alleged that it learned in April 2001 that "Vansickle purposefully removed funds from the account of QHHC" to prevent Capstone from mak-

ing the payment required by the promissory note. Capstone finally alleged this conduct evidenced Vansickle "never intended to abide by the terms of the contract and turn over ownership and control" of QHHC to Capstone. Assuming these actions breached the parties' contract, it is undisputed Capstone knew about the breaches by April 2001, more than four years before Capstone filed suit. *See Edwards v. Blue Cross Blue Shield of Tex.*, 273 S.W.3d 461, 466 (Tex. App.-Dallas 2008, pet. denied) ("Pleadings may be used as summary judgment evidence when they contain statements rising to the level of admitting a fact or conclusion which is directly adverse to the party's theory or defense of recovery."). However, relying on *Willis v. Donnelly*, 118 S.W.3d 10 (Tex.App.-Houston [14th Dist.] 2003), *aff'd in part and rev'd in part on other grounds*, 199 S.W.3d 262 (Tex.2006); *Pickett v. Keene*, 47 S.W.3d 67 (Tex.App.-Corpus Christi 2001, pet. dism'd); *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379 (Tex. App.-Fort Worth 1994, writ denied); and *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.), Capstone argues limitations was tolled until Vansickle sold the stock at a public sale in April 2002 because the parties treated the contract as ongoing and QHHC and Vansickle did not clearly repudiate the contract until she sold the stock.

*Willis, Pickett,* and *Intermedics* all involved employment situations in which one party promised to transfer stock or an ownership interest in a business when certain conditions were met. After the conditions were met, the parties agreed to delay the transfer for various reasons. *Willis,* 118 S.W.3d at 28; *Pickett,* 47 S.W.3d at 77; *Intermedics,* 683 S.W.2d at 844. In each case, there was evidence the party intended to honor the agreement at some point.

*Willis,* 118 S.W.3d at 28; *Pickett,* 47 S.W.3d at 71, 77; *Intermedics,* 683 S.W.2d at 844. Because a performance deadline can be expressly or impliedly waived, the statute of limitations on the breach of contract did not accrue until there was a clear intent to repudiate the contract, generally by firing the employee. *Willis,* 118 S.W.3d at 25, 28; *Pickett,* 47 S.W.3d at 77; *Intermedics,* 683 S.W.2d at 846.

*Hubble* involved a construction contract under which the contractor would receive progress draws as the work progressed. A construction contract is typically a continuing contract under which "the contemplated performance and payment is divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed." *Hubble,* 883 S.W.2d at 381. Limitations begins to run on the contract at the earlier of (1) the completion of the work; (2) the termination of the contract under its own terms; or (3) the anticipatory repudiation of the contract by one party and the adoption of the repudiation by the other party. *Id.* at 382. However, if the terms of a continuing contract call for fixed, periodic performance during the course of the agreement, a cause of action for the breach of the agreement may arise at the end of each period, before the contract is completed. *Davis Apparel v. Gale–Sobel, A Division of Angelica Corp.*, 117 S.W.3d 15, 18 (Tex.App.-Eastland 2003, no pet.). The injured party has four years from each breach to bring suit. *F.D. Stella Prods. Co. v. Scott,* 875 S.W.2d 462, 465 (Tex.App.-Austin 1994, no writ).

Capstone contends the SPA was a continuing contract and limitations was tolled until April 2002 when Vansickle repudiated the contract by selling the QHHC stock. Capstone admits in its brief, however, that the SPA "obligated [Capstone] to make incremental payments of money, and obli-

gated [Vansickle and QHHC] to incrementally transfer stock." Any cause of action for any breach by Vansickle for failing to transfer the shares of QHHC stock arose each time Capstone made a required payment and Vansickle failed to transfer the stock. Any claim Vansickle improperly used QHHC's accounts to prevent Capstone from making a required periodic payment would also arise at the time each payment was due.

Further, making all reasonable inferences in favor of Capstone, the evidence showed the parties were accusing each other of breaching the agreement by the fall of 2000. The parties entered into lengthy negotiations in an effort to resolve the dispute and Capstone made an effort to comply with the SPA. However, there is no summary judgment evidence that the parties agreed to delay any stock transfer or that Vansickle intended to transfer the stock at some point in the future. There is no evidence the parties reached a resolution over Vansickle's handling of QHHC's accounts. There is no evidence of an implied or express agreement to excuse or delay performance under the contract. Rather, there were notices of default and repeated threats of litigation between the parties during the negotiation process. We conclude the continuing contract doctrine did not delay until April 2002 the running of the statute of limitations on Capstone's breach of contract claim.

It is undisputed Capstone knew of the alleged breach of contract more than four years before filing suit. Further, the statute of limitations on Capstone's breach of contract claim was not tolled under the continuing contract doctrine. Therefore, the trial court did not err by granting summary judgment on Capstone's breach of contract claim against Vansickle and QHHC. Finally, as we previously concluded, Capstone waived any claim the trial

court erred by granting summary judgment on Capstone's claims for fraud, quasi-contract, unjust enrichment, and wrongful foreclosure. We overrule Capstone's sole issue on appeal and affirm the trial court's summary judgment orders in favor of Vansickle and QHHC.