Affirmed in Part, Reversed and Remanded in Part, and Opinion filed June
19, 2003















Affirmed in
Part, Reversed and Remanded in Part, and Opinion filed June 19, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-00569-CV

_______________

 

MICHAEL T.
WILLIS, FRANCIE WILLIS, WILLIS HITE ENTERPRISES, INC.,

and URBAN
RETREAT OF HOUSTON, INC., Appellants

 

V.

 

DAN DONNELLY, Appellee and Cross-Appellant

 

V.

 

MICHAEL T.
WILLIS, Cross-Appellee

___________________________________________________

 

On Appeal from
the 157th District Court

Harris County, Texas

Trial Court
Cause No. 95-36693

___________________________________________________

 

O P I N I O N

            This is a double appeal involving
shareholders’ ownership of two closely held corporations, breach of fiduciary
duty, breach of contract, and attorney’s fees.

            In the first appeal, consisting of
37 issues (some overlapping and some containing numerous subparts), Michael T.
Willis, Francie Willis, Urban Retreat of Houston,
Inc., and Willis Hite Enterprises, Inc. seek reversal of a judgment awarding
Dan Donnelly $1.7 million for breach of contract, $1.7 million for breach of fiduciary
duty, and a constructive trust on Urban Retreat stock and realty.  First, we reverse and remand the breach of
contract claim as more specifically delineated in this opinion because the
trial court submitted an improper measure of damages.  Because liability was contested, we may not
reverse solely for a new trial on damages. 
Second, we affirm the judgment for breach of fiduciary duty.  However, because the constructive trust
partially provides a double recovery for breach of fiduciary duty and partially
secures damages for breach of contract, which we are reversing and remanding,
we remand for an election of remedies pertaining to breach of fiduciary duty
and reverse that portion of the constructive trust relating to breach of
contract.

            In the second appeal, Dan Donnelly
contends that the trial court erroneously awarded $400,000 in attorney’s fees
in connection with his $26,982.58 default on a loan made to him by Mike
Willis.  We reverse and remand for a
determination of properly segregated and reasonable attorney’s fees incurred in
prosecuting the defaulted loan.

Background

 

A.  Urban Retreat

 

            Urban Retreat, a Houston day spa,
had its genesis in 1989 through the planning of its visionary, Mike Willis, a Houston
businessman.  He and a hired consultant,
Richard Hite, located a site for the spa adjacent to an exclusive neighborhood,
negotiated a lease for the property, and obtained a loan to renovate the
facility.  Willis also formed two
corporations, Urban Retreat of Houston, Inc. (the day spa, hereinafter “URB”)
and Willis Hite Enterprises, Inc. (envisioned as a management business for a
chain of spas, hereinafter “WHE”).[1]

            Having created the shell of Urban
Retreat, Willis needed only to find staff and clientele.  To this end, Hite approached Dan Donnelly, a
popular hairstylist and president of an established local salon.  Willis and Hite suggested that Donnelly could
transfer his clientele and staff to the soon-to-open day spa.  Donnelly would manage the spa, continue his
hairstyling business, and strive to increase business.  In exchange, if certain longevity or gross
revenue goals were met, Donnelly would gain ownership in URB and WHE, an
increase in salary, and a seat on WHE’s board of
directors.  Willis personally assured
Donnelly that he would provide the financial backing for the business.

            Donnelly executed a Letter Agreement
on July 10, 1989, which set forth the levels of URB and WHE stock ownership and
salary he would attain over the years: (1) 25% URB stock and 10% of WHE stock
after 12 months’ employment or when the spa’s gross revenues equaled those made
in Donnelly’s salon the prior year; (2) annual increases of URB stock, up to
50%, contingent on yearly half-million-dollar gains in gross revenues; (3)
$110,000 salary for two years; and (4) five percent of gross revenues as salary
in year three and beyond.  The Letter
Agreement also provided each shareholder the right of first refusal to purchase
another shareholder’s stock.  Further, it
set forth the value of Donnelly’s shares should his employment terminate:  the greater of two times earnings in the
prior year or assets minus liabilities.

            Donnelly transferred his profitable
business to URB, bringing several hairstylists, manicurists, and other salon
personnel with him.  URB held its grand
opening in mid-December 1989.  The gross
revenues soon surpassed those of Donnelly’s previous salon.  

            However, Urban Retreat’s costs were
great, and the construction expense had exceeded projections.  Further, Willis and one other minimal
shareholder had provided only $1,000 as capital contribution.  The $800,000 construction loan was in URB’s name, although Willis provided a $600,000 certificate
of deposit as collateral.  Additionally,
although Willis personally transferred almost $297,000 to URB, he listed it as
a loan instead of capital contribution.[2]  Thus, just six weeks after its grand opening,
URB was over $1,000,000 in debt.

            Willis quickly recognized the need
to “stop the bleeding.”  There is
evidence that he proposed suspending Hite’s $7,000 a month salary even before
the grand opening.  He also considered
transferring Hite’s employment to WHE instead of URB.  In early 1990, Hite left Urban Retreat.[3]  On January 1, 1990, just two weeks after the spa
opening, the minimal shareholder transferred his 100 shares to Willis, leaving
Willis the sole shareholder of URB’s 1,000 issued
shares.[4]  In April 1990, Willis hired a second
consultant as URB’s “non-operating chief financial
officer.”  Willis promised to sell this
man 25% of URB stock for $1 after Willis’s “capital investment” had been
repaid.  

            Nonetheless, URB continued to lose
money.  Willis was thus faced with a
financial quandary:  he had personally
guaranteed URB’s $14,000 a month lease, pledged his
$600,000 CD as collateral for the construction loan, and invested $540,500 of
cash by December
 31, 1990.  If URB did
not meet its outside financial obligations, Willis would personally lose a
large amount of money.  The Letter
Agreement with Donnelly added to the financial quagmire.  It prevented Willis from firing Donnelly
within the first 12 months of business, except for gross misconduct.   It also guaranteed Donnelly’s stock
ownership at the 12-month mark because gross revenues were on track.  After 12 months, Willis could fire Donnelly
and his shares would be worthless under the Termination provision of the Letter
Agreement.  However, Donnelly was by far
the greatest revenue producer in the spa.

            In March 1991 (after Donnelly met
revenue goals ensuring him 25% URB stock and 10% WHE stock), Willis sought to
change Donnelly’s status.  Willis was no
longer willing to provide 100% of the financing unless he was still “100%
owner.”  He wanted Donnelly to “step up”
and “act like an owner.”  Legal documents
were prepared, but never signed, capping Donnelly’s ownership at 25% of URB
stock and rescinding the Letter Agreement. 
Willis also wanted Donnelly to assume some of the debt, but Donnelly
declined to do so.

            Certainly, it made good business
sense for Willis to minimize his potential losses and work towards
profitability.  However, Willis then
continued to control Urban Retreat in disregard of Donnelly throughout the
years.  He rationalized that Donnelly had
relinquished ownership when he refused to “act like an owner.”  When Donnelly asked about stock issuance,
Willis would assure him that he intended to live up to the Letter Agreement,
but asked to delay until the business “turned the corner.”  At the same time, Willis continued to use URB
as a wholly-owned, sub-chapter S-corporation for tax benefits.  Willis also unilaterally cut Donnelly’s
salary[5] in
March 1992, supposedly temporarily, and diminished his management
responsibilities.  Willis continued to
make “loans” to URB although there is no evidence such loans were approved by
the board of directors.[6]  

            Additionally, Willis controlled
Urban Retreat through his wife, Francie.  He supposedly transferred all of his URB
stock to her.  A “unanimous consent of
the board” was prepared in March 1991, but never signed, reflecting URB’s permission for Francie to
convey to Willis a beneficial interest in URB’s
option to buy its realty.  Then, on July 30, 1992, Willis
and Francie personally purchased the URB realty for
$1.6 million.  On that day, Francie, acting as president, signed a waiver of URB’s option.  Included
in the waiver was the statement that a “third party” wished to buy the realty
and that “said third party has required a release” of URB’s
option.  One week after closing, the Willises amended URB’s lease,
increasing its total rent over the lease term by $280,000.  URB’s monthly rent
of $14,000 remained the same, though the Willises’
monthly note was then only $10,800. 
Further, in the new lease, the Willises
obligated URB to pay the property taxes. 
Finally, in March 1993, Francie signed a
promissory note on behalf of URB, documenting that it owed her husband
$1,897,896 in loans.[7]

            Over these years, Donnelly’s
personal hairstyling revenues had increased, as did the overall gross revenues
of the spa.  In fact, every revenue goal
in the Letter Agreement was met.  Each
time he asked about his stock, Willis would assure Donnelly that he would live
up to the agreement.  Finally, in late
November 1994, Francie learned that Donnelly was
helping a friend plan a new day spa. 
When she learned of this, she asked Donnelly to leave Urban Retreat. 

                                                          B.  Loans to Donnelly

            In January 1992, Donnelly asked
Willis to borrow $18,000.  He signed a
promissory note for that amount at eight percent annual interest, to be repaid
$500 a month from Donnelly’s paychecks. 
On July 1,
 1993, Willis loaned Donnelly an additional $20,000.  He rolled the previous note into the second,
for a total principal of  $31,183.70, at
eight percent annual interest, to be repaid from Donnelly’s paychecks.  The entire amount would become due if Donnelly’s
employment at URB terminated.  After
November 1994, Donnelly stopped paying the loan.  Francie sent him a
demand letter, wishing him well in his new endeavor and urging him to “honor
the trust that Mike [Willis] placed in you.” 


 

                                                                C.  The Lawsuit

            When Donnelly ignored Francie’s demand letter, Willis filed suit for the
outstanding $26,982.58.  Donnelly
reciprocated by suing Willis, Francie, URB, and WHE
for breach of the Letter Agreement and breach of fiduciary duty, among other
claims.  The jury ultimately found that
URB and WHE breached the Letter Agreement; Willis and Francie
ratified it; Donnelly was entitled to 50% of URB stock and 10% of WHE stock;
and that contract damages were $1.7 million. 
The jury further found that Willis had breached his fiduciary duty to
Donnelly and that those damages were $1.7 million.  The jury rejected limitations questions for
both issues.  As for the loans to
Donnelly, the jury found that he defaulted on the promissory note and owed
$26,982.56 to Willis.  Finally, the jury
awarded both sides $400,000 in attorney’s fees.

            Under the trial court’s judgment,
Donnelly was awarded (1) $1.7 million for the fiduciary duty claim; (2) $1.7
million for the contract claim; (3) a constructive trust on the Urban Retreat
realty and on 50% of all URB stock and 10% of all WHE stock possessed by the Willises or Urban Retreat; and (4) $400,000 in attorney’s
fees.  The trial court awarded Mike
Willis (1) $26,982.56 for the promissory note and (2) $400,000 in attorney’s
fees. 

                                                      Breach of
Contract

            In nine of the Willises’
issues and three of Urban Retreat’s issues, they attack the judgment against
them for breach of contract. 

                                            A.  Breach of Contract Jury Findings

            In their first, second, and third
issues, the Willises argue that Donnelly waived
breach of contract because he failed to request jury findings that Willis and Francie breached the Letter Agreement.  However, whether a party has breached a
contract is a question of law for the court, not a question of fact for the
jury.  Meek v. Bishop, Peterson & Sharp, P.C., 919 S.W.2d 805, 808
(Tex. App.—Houston [14th Dist.] 1996, writ denied); Garza v. Southland Corp., 836 S.W.2d 214, 219 (Tex. App.—Houston
[14th Dist.] 1992, no writ).  “The court
determines what conduct is required by the parties, and, insofar as a dispute
exists concerning the failure of a party to perform the contract, the court
submits the disputed fact questions to the jury.”  Meek,
919 S.W.2d at 808; see ITT Commercial
Fin. Corp. v. Riehn, 796 S.W.2d 248, 253 n.3
(Tex. App.—Dallas 1990, no writ).  When
facts are undisputed or conclusively established, there is no need to submit
those issues to the jury.  Sullivan v. Barnett, 471 S.W.2d 39, 44 (Tex. 1971); Meek, 919 S.W.2d at 808.

            Here, the existence of the Letter
Agreement was undisputed; it was also undisputed that Donnelly never received
the benefits promised in the Letter Agreement. 
The issues that were disputed, such as whether Donnelly waived
enforcement of the contract (Question 6) and whether the Willises
ratified it (Question 10), were submitted to the jury.  It is uncontroverted
that the Willises failed to abide by the Letter
Agreement.  Thus, it was not necessary to
submit the question about their breach to the jury, and Donnelly’s failure to
request such a question does not result in waiver.  Accordingly, we overrule the Willises’ first three issues.

                                                  B.  Signatories to the Contract

            In their fourth and fifth issues,
the Willises argue they could not have breached the
Letter Agreement because they were not signatories to it.  The parties listed in the Letter Agreement
were Willis, Hite, URB, WHE, and Donnelly. 
It was signed by Hite (individually and as president of WHE) and
Donnelly.  Willis’s signature line was
crossed out.  

            The Willises
contend their signatures or an authorized agent’s signature was required under
the statute of frauds.  The statute of
frauds provides:

 

 class=Section2>

(a) A promise or agreement . . . is not enforceable
unless the promise or agreement, or a memorandum of it, is 

 

            (1) in writing; and

 

(2) signed
by the person to be charged with the promise or agreement or by someone
lawfully authorized to sign for him.

 

 class=Section3>

Tex. Bus. & Com. Code Ann. § 26.01(a)(2) (Vernon 2002).  The Willises argue
that they did not sign the contract nor is there evidence that Hite had
authority to bind them. 

            In their argument, the Willises ignore the jury’s finding that they ratified the
contract.  Ratification is the adoption
or confirmation by a person with knowledge of all material facts of a prior act
that did not then legally bind him and that he had the right to repudiate.  Avary v. Bank of Am.,
N.A., 72 S.W.3d 779, 788 (Tex. App.—Dallas 2002, pet. denied).  Such approval can be given through act, word,
or conduct.  K.B. v. N.B., 811 S.W.2d 634, 638 (Tex. App.—San Antonio 1991, writ
denied); see Stable Energy, L.P. v.
Newberry, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied)
(ratification can occur if one affirmatively acknowledges a contract).  Further, whether Hite was the Willises’ authorized agent is of no consequence.  See
Hays v. Marble, 213 S.W.2d 329, 333 (Tex. Civ.
App.—Amarillo 1948, writ dism’d).  “One may ratify the acts or contract of
another . . . whether the other was his agent and exceeded his authority as
such or was not his agent at all.”  Id.  Thus, it is the Willises’
ratification of the contract that binds them to perform, not their
signatures.  We overrule the Willises’ fourth and fifth issues.

                                                                C.  Ratification

            In their sixth issue, the Willises contend that their ratification of the contract is
insufficient to support recovery for breach of contract.  They again urge that a separate jury finding
of breach is necessary.  We have already
overruled this contention in our disposition of issues one through three.  

            Additionally, in a single sentence
in issue six, the Willises argue the evidence is
legally and factually insufficient to show that they ratified or breached the
Letter Agreement.  Bare assertions of
error, without citation to the record, present nothing for review.  Tex.
R. App. P. 38.1(h); Thedford v. Union Oil
Co. of Ca., 3 S.W.3d 609, 615 (Tex. App.—Dallas 1999, pet. denied).  When a party fails to include citation of
authority or discussion of relevant facts to support its sufficiency
contention, we will not perform an independent review of the record and
applicable law to determine whether the error complained of occurred.  Ryan v.
Abdel-Salam, 39 S.W.3d 332, 336 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied).  Thus, the Willises’ sufficiency challenge is waived.  Further, their bald assertion of legally
insufficient evidence is readily defeated, given Mike Willis’s own testimony
that he intended to abide by the Letter Agreement and their admission that
Donnelly never received his stock.

                                            D.  Waiver through Pre-Suit Conduct

            In the Willises’
seventh issue and Urban Retreat’s first and third issues, appellants contend
that, as a matter of law, Donnelly waived breach of contract by his pre-suit
conduct.  Waiver is an affirmative
defense.  Tex. R. Civ. P. 94; Rogers v. Cont’l
Airlines, Inc., 41 S.W.3d 196, 198 (Tex. App.—Houston [14th
Dist.] 2001, no pet.).  “In Texas, waiver
occurs when a party intentionally relinquishes a known right or engages in
intentional conduct inconsistent with claiming that right.”  Frost
Nat’l Bank v. Burge, 29 S.W.3d 580, 592 (Tex. App.—Houston [14th
Dist.] 2000, no pet.) (citing Tenneco
Inc. v. Enter. Prods. Co., 925
S.W.2d 640, 643 (Tex.
1996)).  A party’s express renunciation
of a known right may establish waiver.  Id.  It is well established that waiver turns on
the question of intent.  Ford v. Culbertson, 308 S.W.2d 855, 865
(Tex.
1958).  Whether waiver has occurred is
therefore ordinarily a question of fact for a jury to decide.  Tenneco,
925 S.W.2d at 643.  In this case, the
jury found in Question 6 that Donnelly had not waived breach of contract.[8]

            When an appellant attacks the legal
sufficiency of an adverse answer to a finding on which it has the burden of
proof, the appellant must overcome two hurdles. 
Victoria Bank & Trust Co. v.
Brady, 811 S.W.2d 931, 940 (Tex.
1991).  First, the record must be
examined for evidence that supports the finding, while ignoring all evidence to
the contrary.  Second, if no evidence
supports the fact finder’s answer, then the entire record must be examined to
see if the contrary proposition is established as a matter of law.  Id.; Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989).

            There is evidence in the record
supporting the jury’s finding that Donnelly did not intentionally relinquish a
known legal right.  Donnelly testified,
“Mr. Willis . . . continually told me that . . . once we turned the corner, you
know, that he would at some point live up to the Letter Agreement.  But until that time, I had to live by
whatever compensation changes were enacted by Mr. Willis.”  According to Donnelly, Willis would tell him
that he could “not issue stock at this time.” 
Mike Willis’s testimony corroborates Donnelly’s account.  He stated that he merely delayed issuing the
stock and that had he been asked, he would have complied with the Letter
Agreement.  Because there is evidence
supporting the jury’s finding, we do not review the record for evidence to the
contrary.  Accordingly, we overrule the Willises’ seventh issue and Urban Retreat’s first and third
issues. 




                                                       E.  Statute of Limitations

            In the Willises’
eighth issue and subpart (a) of Urban Retreat’s second issue, they contend that
Donnelly’s breach of contract claim is barred by the statute of
limitations.  A breach of contract action
is subject to a four-year statute of limitations.  Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 2002).  Donnelly filed his lawsuit in August
1995.  The jury found there was no
failure to comply before August 24,
 1991, making Donnelly’s claim timely.

            Limitations is an affirmative defense,
which the asserting party must prove.  Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 517 (Tex.
1988).  Generally, a cause of action
accrues, and the statute of limitations begins to run, when facts come into
existence that authorize a claimant to seek a judicial remedy.  Johnson
& Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962
S.W.2d 507, 514 (Tex.
1998).  The time for accrual of a cause
of action is a question of law.  Moreno v. Sterling Drug, Inc., 787
S.W.2d 348, 351 (Tex.
1990).  A breach of contract claim
accrues when the contract is breached.  Stine v. Stewart, 80 S.W.3d 586, 592 (Tex.
2002).  Appellants argue that when they
failed to transfer the first 25% of stock in 1990, the contract was breached
and Donnelly’s statute of limitations began to run. 

            In contrast, Donnelly argues that
his suit was timely, citing two cases with facts substantially similar to the
facts in this case, Pickett v. Keene,
47 S.W.3d 67 (Tex. App.—Corpus Christi 2001, pet. dism’d),
and Intermedics, Inc. v. Grady, 683 S.W.2d 842 (Tex.
App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.).  Both Pickett and Intermedics involved contracts in
which portions of ownership in businesses were to be transferred to parties
working for each business.  In each case,
deadlines for such transfers were delayed by the parties.  In each case, the business ultimately tried
to avoid transferring any portion of ownership and fired the worker.  And in each case, the business claimed on
appeal that because breach had occurred with the first missed deadline many
years before, the case was barred by the statute of limitations.  In both cases, the appellate court held that
the cause of action accrued at the employee’s termination (when the employer
clearly repudiated the agreement to transfer ownership).  Pickett,
47 S.W.3d at 77; Intermedics,
683 S.W.2d at 847. 

            In asserting the statute of
limitations, appellants disregard the undisputed evidence that deadlines were
postponed so the Willises could reap tax benefits and
URB could “turn the corner.”  “Even when
an exact date of performance is specified in the contract, this provision can
be waived by the parties.”  Sieber & Calicutt,
Inc. v. La Gloria Oil & Gas Co., 66 S.W.3d 340, 347 (Tex. App.—Tyler
2001, pet. denied); see Intermedics, 683
S.W.2d at 846; see, e.g., Pickett, 47 S.W.3d at 77.  Further, an extension of time to perform can
be expressed or implied and does not affect the other provisions of the
contract.  Intermedics, 683 S.W.2d at
846.  The evidence indicates that
appellants intended to honor the agreement “at some point.”  Donnelly relied on Willis’s assurances and
accepted the delays.  There was no clear
intent by appellants to repudiate the Letter Agreement until Donnelly’s
termination.  See Pickett, 47 S.W.3d at
77; Intermedics,
683 S.W.2d at 847.  Thus, the contract
claim did not accrue before August 24,
 1991, and Donnelly’s claims were timely asserted in August
1995.  We overrule the Willises’ issue eight and Urban Retreat’s issue two,
subpart (a).

                                                       F.  Response to Jury Note

            In
the Willises’ ninth issue and Urban Retreat’s issue
two, subpart (b), appellants contend the trial court improperly responded to
the following jury note about the statute of limitations:

 

 class=Section4>

Does an
answer of yes to question no. 7 [the statute of limitations question] indicate
that the failure to comply [with the Letter Agreement] happened before that
date and excludes the possibility that it happened on or after that date?[9]

 

 class=Section5>

We find
that appellants’ complaint is waived because (1) the record fails to sufficiently
reflect (a) that a supplemental instruction was given to the jury or (b) the
contents of such an instruction; and (2) appellants incorrectly and untimely
presented their requested supplemental instruction to the trial court. 

            To show error regarding a
supplemental jury instruction, the record must reflect the contents of the
instruction and that the instruction was given. 
Keene Corp. v. Gardner, 837
S.W.2d 224, 228–29 (Tex. App.—Dallas 1992, writ denied).  In this case, neither the jury’s note nor the
trial court’s written response are included in the clerk’s record.[10]  Further, while the reporter’s record repeats
the jury’s question word-for-word, it does not contain the trial court’s
supplemental instruction verbatim.  The
trial court’s response was apparently written, extensively discussed by the
parties and the court, and altered throughout the discussion.  However, the final wording of the response is
not reflected in the reporter’s record. 
Additionally, at the end of discussion about the jury’s note, the
reporter’s record denotes only “jury deliberating,” not whether an instruction
was actually delivered to the jury.  See id. (holding court reporter’s
notation that “whereupon the jury continued to deliberate” was insufficient to
show court delivered additional charge). 
Thus, there is an insufficient record showing either the contents of the
supplemental instruction or that the instruction was given to the jury. 

            Next, appellants argue the trial
court should have provided the supplemental question, “What is the earliest of
any breach you have found?” in response to the jury’s note.  However, appellants have waived error because
they requested this supplemental question orally during jury deliberations.  “To complain of the trial court’s omission of
a requested instruction on appeal, a party is obliged to make a written request to the trial court for a
substantially correct instruction.”  Jarrin v. Sam White Oldsmobile Co., 929 S.W.2d
21, 25 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (emphasis added).  Appellants’ oral request is thus
unsatisfactory.  Further, the appellants
filed a written request for this question too late, after the jury returned its verdict.  Waiting until after verdict to file a request
for a supplemental jury instruction is untimely.  See
Scott Fetzer
Co. v. Read, 945 S.W.2d 854, 871 (Tex. App.—Austin 1997), aff’d, 990 S.W.2d
732 (Tex. 1999). 

            Additionally, appellants have not
provided case law that their proposed supplemental question was legally
correct, while Question 7 was not.  The
statute of limitations was their 

 class=Section6>

affirmative
defense, and they voiced no objection to Question 7 during the charge
conference.  Lastly, appellants’ argument
about their proposed supplemental jury question simply reiterates their
previous points of error, which we have overruled, about accrual of a contract
claim. 

            For the above reasons, we overrule
the Willises’ issue nine and Urban Retreat’s issue
two, subpart (b).  

                                                Breach of Fiduciary
Duty

            The
Willises’ next ten issues address Mike Willis’s
breach of fiduciary duty.  

          A.  Existence of Majority Shareholder/Minority
Shareholder Relationship

            In their tenth, eleventh, and
twelfth issues, the Willises argue that there is no
evidence of breach of fiduciary duty because, after October 1990, there was
never a majority-minority shareholder relationship between Willis and
Donnelly.  Specifically, Willis argues
that Francie became sole shareholder of Urban Retreat
in October 1990, and thus he had no majority shareholder’s duty after that
time.  Further, he argues that Donnelly
was never a shareholder.

            When a party without the burden of
proof challenges the legal sufficiency of the evidence to support an adverse
jury finding, we construe the issue as a “no evidence” point.  See
Gooch v. Am. Sling Co., 902 S.W.2d 181, 183–84 (Tex. App.—Fort Worth 1995,
no writ).  In determining a “no evidence”
point, we are to consider only the evidence and inferences that tend to support
the finding and disregard all evidence and inferences to the contrary.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994).  If there is more than a scintilla
of such evidence to support the finding, the claim is sufficient as a matter of
law.  Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993).

            The record includes evidence that
Willis transferred stock to Francie as late as
October or November 1991.  Additionally, Francie testified that a magazine article in January 1991
identified her husband and Donnelly as the owners of Urban Retreat.  This article was written approximately one
month after the Letter Agreement contemplated transfer of 25% of URB stock and
10% WHE stock to Donnelly.  Further,
shortly after March 1991, she was privy to a meeting between her husband and
Donnelly in which Willis asked Donnelly to cap his ownership interest in URB at
25%.  This is more than a scintilla of
evidence showing that both Donnelly and Willis were shareholders in Urban
Retreat after October 1990.  Accordingly,
we overrule issues ten, eleven, and twelve.

                                              B.  Claim Sounds in Contract Only

            In issue 13, the Willises
contend that a party cannot claim breach of fiduciary duty when the only
alleged damages are the subject of a contract. 
The Willises argue that Donnelly’s only
alleged damages arise from breach of the Letter Agreement; thus, the claim
sounds only in contract.  See Southwestern Bell Tel. v. DeLanney, 809
S.W.2d 493, 494 (Tex.
1991).  It is often difficult to
determine whether a party’s cause of actions sound in contract or tort or both—i.e., a “contort.”  Ludlow
v. DeBerry, 959 S.W.2d 265, 275 (Tex.
App.—Houston [14th Dist.] 1998, no pet.); see
Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617 (Tex.
1986).  A two-part test, set forth in DeLanney,
guides this determination.  809 S.W.2d at
494–95.  

            First, we look to the source of the
duty to act.  Id. at
494.  If the conduct in question gives
rise to liability only because it breaches an agreement between the parties,
the claim ordinarily sounds in contract. 
Id.  In this first step, we “must look to the
substance of the cause of action and not necessarily the manner in which it was
pleaded.”  Reed, 711 S.W.2d at 617–18. 
Second, we consider the nature of the remedy or damages sought by the
claimant.  DeLanney, 809 S.W.2d at 494.  “The nature of the injury most often determines
which duty or duties are breached.  When
the injury is only the economic loss to the subject of a contract itself, the
action sounds in contract alone.”  Reed, 711 S.W.2d at 618.  

            Additionally, the contract between
the parties may create both contract and tort duties.  Id.; see DeLanney,
809 S.W.2d 494 n.1 (“[S]ome contracts involve special
relationships that may give rise to duties enforceable as torts . . . .”).  “[A] plaintiff is not precluded from
asserting a tort cause of action solely because his damages are analogous to
the damages sought in a contractual claim.” 
Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 674 (Tex. App.—Houston
[1st Dist.] 1996, no writ). 

            In this case, breach of contract
arose from failure to transfer shares to Donnelly and failure to compensate him
at the rate set forth in the Letter Agreement. 
Donnelly alleged that breach of fiduciary duty arose from Willis’s (1)
purchase of the URB realty; (2) lease of the realty to URB for the total debt
on the property; (3) treatment of capital contributions as loans; (4)
representation that Urban Retreat was worthless; and (5) personal use of Urban
Retreat’s tax benefits.  The damages for
breach of contract, more fully addressed below, were the unpaid compensation
and fair market value of the Urban Retreat stock.  In contrast, the damages for breach of
fiduciary duty involved the value of the realty and the benefits personally
taken by Willis.  Thus, Donnelly’s
injuries did not arise solely from breach of the Letter Agreement.  Accordingly, we do not agree that the damages
sought were solely contract damages.  We
overrule issue thirteen.

                                          C.  Existence of Fiduciary Relationship

            In their fourteenth issue, the Willises contend the trial court erred in finding that a
fiduciary relationship existed between Willis and Donnelly and in instructing
the jury that such a relationship existed.[11]  Whether a fiduciary relationship exists is
normally a question of fact for the jury. 
Procom Energy, L.L.A. v. Roach, 16 S.W.3d 377,
382 (Tex. App.—Tyler 2000, pet. denied); Hoggett v. Brown, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.]
1997, pet. denied); Farah,
927 S.W.2d at 675.  “When the issue is
one of no evidence or conclusive evidence, the issue is a question of
law.”  Farah, 927 S.W.2d at 675.  Here, the Willises
contend that there was no evidence of a fiduciary relationship or, conversely,
the evidence conclusively shows no
fiduciary relationship exists.

            “[A] co-shareholder in a closely
held corporation does not as a matter of law owe a fiduciary duty to his
co-shareholder.”  Hoggett, 971 S.W.2d at 488.  Instead, the existence of such a duty depends
on the circumstances.  Pabich v. Kellar, 71
S.W.3d 500, 504–05 (Tex. App.—Fort Worth 2002, pet. denied).  For example, a fiduciary duty exists if a
confidential or “informal” relationship exists. 
Id. at 505; In re Estate of Fawcett, 55 S.W.3d 214,
220 (Tex. App.—Eastland 2001, pet. denied). 
Further, fiduciary relationships may be created by contract; through the
repurchase of a shareholder’s stock in a closely held corporation, see Fawcett, 55 S.W.2d at 220; in
certain circumstances in which a majority shareholder in a closely held
corporation dominates control over the business, Hoggett, 971 S.W.2d at 488 n.13;
and in closely held corporations in which the shareholders “operate more as
partners than in strict compliance with the corporate form.”  DeBord v. Circle Y of
Yoakum, Inc., 951 S.W.2d 127, 133 (Tex. App.—Corpus Christi 1997), rev’d on other grounds, 967 S.W.2d 352 (Tex. 1998).

            We disagree that there was no
evidence of, or alternatively evidence conclusively disproving, a fiduciary
relationship.  There is evidence tending
to show that Mike Willis engaged in oppressive conduct [12] and
dominated control over the business.  See Hoggett,
971 S.W.2d at 488 n.13.  For instance,
Willis alone reaped personal tax advantages by treating URB as a wholly-owned
business.  Willis, not Urban Retreat or
the board of directors, hired a new CEO and promised him ownership in URB if
Willis’s capital investment was repaid. 
Further, the evidence shows that although Willis promised to provide
cash capital contributions, he continually treated all but $1,000 of such
contributions over the years as loans. 
There is evidence that Willis’s promises to provide capital were
inducements to Donnelly to join the business. 
See Willis, 997 S.W.2d at 801
(defining oppressive conduct as that which defeats the minority shareholder’s
expectations that were reasonable and central to the decision to join the
venture).  The evidence shows that Willis
kept Urban Retreat thinly capitalized and thus limited its on-going ability to
operate.  And, if debts always surpassed
income and assets, Donnelly’s shares would be worth little to nothing under the
Termination provision of the Letter Agreement (defining share value as the
greater of two times prior year’s earnings or assets minus liabilities).

            Further, after Willis could not
convince Donnelly to cap his ownership interest, he found a way to purchase the
spa realty for himself.  First, a
corporate document was prepared allowing Francie to
assign Willis an interest in the spa’s option. 
Later, he bought the realty, having Francie
waive URB’s option the day of closing.  Although URB supposedly could not afford to
buy the realty, the Willises then charged the total
debt to URB through rent.[13]  By purchasing the realty, Willis also ensured
that Donnelly’s stock value decreased under the Letter Agreement.[14]  These could be construed as purposeful
actions to dilute the value of shares while employing the business and its
assets solely for Willis’s own benefit.  See generally Duncan v. Lichtenberger,
671 S.W.2d 948, 953 (Tex. App.—Fort Worth 1984, writ ref’d
n.r.e.) (citing Patton
v. Nicholas, 279 S.W.2d 848 (Tex. 1955),
regarding lowering of minority’s share value).

            Additionally, the evidence shows
that Willis transferred all the URB stock to Francie
as late as November 1991.  By that time,
Donnelly was a minority owner in the business, and he had a right of first
refusal to purchase the shares per the Letter Agreement.  Willis did not extend this opportunity to
Donnelly.  See Thompson v. Hambrick, 508 S.W.2d 949,
951–54 (Tex. Civ. App.—Dallas 1974, writ ref’d n.r.e.) (fact issue whether
majority shareholder’s sale of shares without offering right of first refusal
to minority shareholder was a breach of fiduciary duty).  Further, Willis unilaterally cut Donnelly’s
salary and tried to cap his ownership interest, after delaying issuance of his
stock.  Willis’s own discovery answers
reveal that he decided Donnelly was not acting like an owner, and he justified
treating him like a nonowner for that reason.  See
Davis v. Sheerin, 754 S.W.2d 375, 382 (Tex.
App.—Houston [1st Dist.] 1988, writ denied) (conspiring to deprive one of
ownership in a corporation is oppressive conduct).  Finally, case law indicates Willis would owe
a fiduciary duty to Donnelly in repurchasing his shares.  See
Fawcett, 55 S.W.3d at 219–20.  

            These examples defeat the Willises’ argument that only legal absolutes existed, i.e., no evidence supported the
existence of a fiduciary relationship or that they conclusively disproved the
existence of a fiduciary relationship.[15]

            Lastly,
the Willises contend because it is a question of
fact, the trial court erred in instructing the jury that a fiduciary
relationship existed.[16]  However, the Willises
failed to object to Question 22 in the charge on this basis.[17]   Instead, they objected as follows:

 

 class=Section7>

Plaintiffs
would object to Question No. 22 in that there is no evidence to support
submission of the issue.

 

Plaintiffs
object to the submission of Question No. 22 because as a matter of law, Mike
Willis owes no fiduciary duty to Dan Donnelly.

 

 

 class=Section8>

These
objections were insufficient to alert the trial court that existence of a
fiduciary relationship was a fact question for the jury.  See State Dept. of Highways & Pub. Transp.
v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)
(test is whether the party made the trial court aware of the complaint, timely
and plainly, and obtained a ruling); see,
e.g., McAllister v. Oman, 2001 WL
870037, at *1 (Tex. App.—Houston [14th
Dist.] Aug. 2, 2001, no pet.)
(not designated for publication). Instead, the objections raise “no evidence”
and “conclusive evidence,” which we rejected above.  To preserve error, the Willises
were required to object that the question was omitted.  See
Tex. R. Civ.
P. 278.  The record is devoid of
the slightest indication from the Willises that
existence of a fiduciary relationship was a jury question.  Thus, the trial court’s error, if any, is not
a ground for reversal in this case.  See id.

            Accordingly,
we overrule issue 14.

                                                  D.  Failure to Obtain Findings

            In their fifteenth issue, the Willises argue that Donnelly failed to obtain a jury
finding on the existence of a fiduciary relationship.  As we addressed in regard to issue 14, the Willises did not preserve error to complain about the lack
of a jury finding.  In their sixteenth
issue, the Willises contend that Donnelly “failed to
secure a finding as to ownership of any shares.”  This point of error is vague, and the Willises offer no argument, citation to the record, nor
authority in support of it.  They have
waived this issue.  Thedford, 3 S.W.3d at 615; Casteel-Diebolt v.
Diebolt, 912 S.W.2d 302, 304–05 (Tex.
App.—Houston [14th Dist.] 1995, no writ) (an issue not supported by authority
is waived).  Accordingly, we overrule
issues 15 and 16.

                                                            E.  Burden of Proof

            In issue 17, the Willises
complain that the trial court improperly placed the burden of proof for breach
of fiduciary duty on Mike Willis.  The Willises argue that before the burden of proof could be
placed on Mike Willis, Donnelly was first required to establish the existence
of a fiduciary relationship.  This
argument is an attempt to circumvent the Willises’
failure to object or to request the missing jury question on the existence of a
fiduciary relationship.  Further, the
profiting fiduciary has the burden to prove questioned transactions were “fair,
honest, and equitable.”  Estate of Townes
v. Townes, 867 S.W.2d 414, 417 (Tex. App.—Houston
[14th Dist.] 1993, writ denied); Miller
v. Miller, 700 S.W.2d 941, 947 (Tex. App.—Dallas 1985, writ ref’d n.r.e.); see Tex. Bank & Trust Co. v. Moore, 595
S.W.2d 502, 508–09 (Tex.
1980).  The trial court did not misplace
the burden of proof.  We overrule issue
seventeen.      

                                                             F.  Standing to Sue

            In issue 18, the Willises
argue that Donnelly was required to bring a shareholder’s derivative suit to
assert claims on behalf of the corporation for breaches of fiduciary duty.   However, from our review of Donnelly’s
pleadings, we conclude that he did not sue on behalf of the corporation.  He only sued in an individual capacity.

            To the extent the Willises are actually arguing that no fiduciary duties
flowed to Donnelly individually, we refer to our analysis of issue
fourteen.  As discussed, there are
instances in Texas law in
which shareholders in closely held corporations owe other shareholders
fiduciary duties.  As we acknowledged in
discussing issue fourteen, the existence of such a fiduciary relationship is a
question of fact for the jury.  As we
further held, the Willises cannot complain on appeal
about the absence of a jury finding because they failed to preserve error.  Further, we disagreed with the Willises’ two contentions that (1) there was “no evidence”
of a fiduciary relationship; or (2) they conclusively proved the nonexistence
of such a relationship.  We believe the
evidence raised a fact issue on the existence of a fiduciary relationship
between Willis and Donnelly, individually.

            Accordingly,
we overrule issue 18.

                            G.  Statute of Limitations on Breach of Fiduciary
Duty

            In their nineteenth issue, the Willises contend that Donnelly’s claim for breach of
fiduciary duty is barred by the statute of limitations.  There is a four-year statute of limitations
for breach of fiduciary duty.  Tex. Civ. Prac. & Rem. Code Ann.
§ 16.004 (Vernon 2002).  The Willises argue that the only alleged breach of fiduciary
duty was Willis’s failure to disclose information before Donnelly executed the
Letter Agreement on July 10,
 1989.  Donnelly did not sue
until August 25, 1995, more than
four years later. 

            However, Donnelly’s petition also
alleged Mike Willis’s self-dealing, treating capital contributions as loans,
failing to keep proper and accurate financial records, and improperly
transferring stock to Francie.  Evidence shows that (1) Francie
received 100% of the URB shares as late as October or November 1991; (2) Mike
Willis made numerous “loans” to URB after August 1991; and (3) Mike and Francie bought the URB property and waived the spa’s option
to purchase it in July 1992.  Because
these alleged breaches of fiduciary duty occurred within four years of suit,
Donnelly’s claims are not barred by the statute of limitations.  We overrule issue nineteen.

                                                       Constructive Trust

            In their twentieth, twenty-first,
and twenty-second issues, the Willises contend that
the trial court erroneously imposed a constructive trust on the URB realty, 50%
of URB stock and 10% of WHE stock because (1) a fiduciary relationship did not
exist or did not exist apart from the dealings made the basis of the lawsuit;
(2) no fraud was established; (3) no pleadings support imposition of equitable
relief; (4) there was no commingling; (5) equitable relief is improper to
enforce contractual obligations and where the plaintiff gave services; (6)
post-verdict evidence was improperly admitted; (7) imposition of the
constructive trust violates their right to trial by jury and due process; (8)
there was no evidence, insufficient evidence, and no finding upon which to
impose a constructive trust; (9) constructive trusts should not be imposed
where money damages are available; and (10) a constructive trust is improper
because Donnelly had unclean hands.  In
issues five, six, and seven, Urban Retreat argues many of these same subissues and also claims that laches
prevent imposition of the constructive trust.

 








                                        A.  Error in Imposing Constructive Trust  

            We address the first eight subissues, which constitute the Willises’
issue 20 and Urban Retreat’s issue five and portions of issue six.[18]  

            Again, appellants contend no
fiduciary relationship existed. 
Accordingly, we refer to our disposition of issue 14.  Second, appellants argue that fraud must be
shown before a constructive trust is imposed. 
However, “[a]ctual fraud, as well as breach of
a confidential relationship, justifies the imposition of a constructive
trust.”  Meadows v. Bierschwale, 516 S.W.2d 125,
128 (Tex. 1974); see Gaines v. Hamman,
163 Tex. 618, 358
S.W.2d 557, 560 (1962); Omohundro v. Matthews, 161 Tex. 367, 341
S.W.2d 401, 405 (1960); see also Duncan v. Lichtenberger, 671 S.W.2d 948, 952, 954
(Tex. App.—Fort Worth 1984, writ ref’d n.r.e.) (stating fraud is not required for breach of
fiduciary duty; equitable relief is available for such breach).

            Third, appellants contend that there
are no pleadings to justify imposition of the constructive trust on the
realty.  They do not cite any authority
for the proposition that Donnelly, in seeking a constructive trust, must plead
the specific property to which it should attach.  In his petition, Donnelly sought a
constructive trust because the Willises had been
unjustly enriched by retaining all the Urban Retreat stock.  His pleadings for a constructive trust also
refer to and incorporate pleadings about Willis’s self-dealing, false
characterization of capital, complete control of the business, and inaccurate
record keeping.  Further, Donnelly
generally sought “all such other damages as [he] may be justly entitled,” and
all “relief, at law or in equity[,] to which [he] is justly entitled.”  The appellants did not specially except to
the pleadings for equitable relief. 
“When a party fails to specially except, courts should construe the
pleadings liberally in favor of the pleader.”  Horizon/CMS Healthcare Corp. v.
Auld, 34 S.W.3d 887, 897 (Tex.
2000).  We hold that Donnelly’s pleadings
are sufficient to support a claim for equitable relief, justifying the court’s
imposition of a constructive trust. 
Accordingly, we overrule this subissue.

            Fourth, appellants argue that a
constructive trust was improper because the URB realty was never commingled
with Urban Retreat stock.  The cases
appellants cite show that a constructive trust is proper when a fiduciary
commingles assets.  See Graham v. Turner, 472 S.W.2d 831, 840 (Tex. Civ.
App.—Waco 1971, no writ) (shareholder in closely held corporation wrongly sold
corporate assets and mingled proceeds with his own assets); Andrews v. Estate of Andrews, 326 S.W.2d
203, 207 (Tex. Civ. App.—Waco 1971, no writ)
(plaintiffs sought percentage of deceased’s estate on theory that farm income
from their land had been commingled with the estate).  However, neither case stands for the
proposition that commingling is a prerequisite for imposition of a constructive
trust.  Further, commingling was not an
issue at trial in this case.  Appellants’
argument is thus inapposite. 

            Fifth, appellants argue that a
constructive trust was improper (1) to enforce contract rights and (2) because
Donnelly “parted with services, not property,” and the proper remedy for
services is payment.  As detailed later
in this opinion, we are reversing the contract claim because the jury
considered the wrong measure of damages. 
Thus, we are also reversing the portion of the constructive trust that
addressed Donnelly’s contract remedies. 
Additionally, we have already held that Donnelly sought damages for
breach of fiduciary duty different from and in addition to those for breach of
contract.  Further, a constructive trust
has a “very broad function of redressing wrong or unjust enrichment in keeping
with the basic principles of equity and justice.”  Ginther
v. Taub, 675 S.W.2d 724, 728 (Tex.
1984).  To disallow a constructive trust
because a party renders services only is “an unduly restrictive view of the
remedy of constructive trust.”  Meadows, 516 S.W.2d at 131.  We overrule this subissue.

            Sixth, appellants protest that the
trial court improperly admitted evidence post-verdict, specifically the
affidavit of Sal Rodriguez, which was attached to Donnelly’s supplemental
motion to enter judgment.  Donnelly
attached the affidavit as support for his post-verdict request to order amended
URB tax returns.  Appellants objected to
the affidavit, but there is no ruling in the record as required by Rule of
Appellate Procedure 33.1(a)(2).  Further,
the record does not reflect whether the trial court actually considered the
affidavit.  To the contrary, the trial
court did not order amendments to the tax return.  We thus overrule this subissue.

            Seventh, appellants contend that imposition
of the constructive trust violates their right to due process and trial by
jury.  Specifically, they complain that
the trial court entered judgment on claims neither pleaded nor submitted to the
jury.  We have already addressed these
claims as follows: (1) we found Donnelly’s pleadings for equitable relief
sufficient for imposition of a constructive trust and (2) we also found that
appellants failed to preserve error that the existence of a fiduciary
relationship was a fact question for the jury. 
The jury’s finding of breach of fiduciary duty permits imposition of a
constructive trust.  See Carr v. Weiss, 984 S.W.2d 753, 767 (Tex. App.—Amarillo 1999,
pet. denied).

            Eighth, the Willises
contend in one sentence, without citation to the record or to authority, that
“there was no evidence, no legally sufficient evidence, no factually sufficient
evidence, and no finding of any basis upon which to impose a constructive trust
on the stock or real property.”  In the
context of the Willises’ issue 20, this one sentence
is merely a catch-all included at the end of briefing four-and-one-half pages
long.  Because it is multifarious,
lacking in substantive analysis, and devoid of citation to authority and the
record, they have waived this eighth subissue.  See Ryan
v. Abdel-Salam,
39 S.W.3d 332, 336 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied);  Interstate Northborough P’ship,
8 S.W.3d at 7 n.2;  Keever v. Finlan, 988 S.W.2d 300, 314 (Tex.
App.—Dallas 1999, pet. dism’d).

            Accordingly, having addressed these
eight subissues, we overrule the Willises’
issue 20, Urban Retreat’s issue five, and the first portion of Urban Retreat’s
issue six.




                                                   B.  Money
Damages Available

            We next address the ninth subissue, which comprises the Willises’
twenty-first issue and Urban Retreat’s seventh issue.  Appellants contend that the trial court erred
in awarding equitable relief because Donnelly failed to establish that he
lacked an adequate remedy at law.  In
other words, appellants claim that where money damages are available, a
constructive trust may not be imposed.[19] 

            The thrust of appellants’ argument
is that (1) a constructive trust is an equitable remedy; (2) equitable remedies
such as injunctions and specific performance require a lack of an adequate
remedy at law; (3) thus, an inadequate remedy at law is a prerequisite to
imposition of a constructive trust; (4) money damages are available to
compensate any breach of fiduciary duty in this case; and (5) Donnelly is
accordingly not entitled to a constructive trust.  However, the forms of constructive trusts are
“practically without limit” and may be “applied wherever necessary for the
obtaining of complete justice, although
the law may also give the remedy of damages against the wrong-doer.”  Fitz-Gerald v. Hull,
237 S.W.2d 256, 263 (Tex. 1951)
(emphasis added); Wheeler v. Blacklands Prod. Credit Ass’n.,
627 S.W.2d 846, 849 (Tex. App.—Fort Worth 1982, no writ); cf. Restatement of
Restitution § 160 cmt. e (1937) (constructive
trust appropriate for cases involving title to land or where “payment or
transfer was procured by an abuse of a fiduciary or confidential
relation.”).  The trial court was not
precluded from imposing a constructive trust. 
Accordingly, we overrule the Willises’ issue
21 and Urban Retreat’s issue seven.




                                                             C.  Unclean Hands

            In the Willises’
issue 22[20] and
the second portion of Urban Retreat’s issue six, appellants argue that
Donnelly’s claims for equitable relief are barred by the doctrine of unclean
hands.  One who seeks a constructive
trust must come with clean hands regarding the issue in dispute.  See Omohundro, 341 S.W.2d at 410; see also Wynne v. Fischer, 809 S.W.2d 264, 267 (Tex. App.—Dallas
1991, writ denied).  It is within a trial
court’s sound discretion to determine whether a party has unclean hands and
whether the party’s alleged fraudulent actions should bar equitable
relief.  Thomas v. McNair, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi
1994, no writ).    

            Appellants contend Donnelly’s hands
are unclean because he breached his contract with them.  Specifically, they contend he failed to bring
his entire former staff to Urban Retreat, produced less revenue than promised,
and attempted to establish a competing business.[21]  However, breach of contract is an issue
separate from breach of fiduciary duty. 
To bar equitable relief, a plaintiff’s inequitable conduct should arise
with regard to the issue in dispute.  Wynne, 809 S.W.2d at 267.  Further, a party complaining of an opponent’s
unclean hands “‘must show that he himself has been injured by such conduct to
justify the application of the principle to the case.’”  Omohundro, 341 S.W.2d at 410 (quoting 2 Pomeroy’s Equity
Jurisprudence at 99); see Thomas, 882
S.W.2d at 880; see also Norris of
Houston, Inc. v. Gafas, 562 S.W.2d 894, 897 (Tex.
Civ. App.—Houston [1st Dist.] 1978, writ ref’d n.r.e.) (hairstylist
claimed salon sought equity with unclean hands, but she failed to show
harm).  Even if we assume Donnelly
breached his contract, appellants have neither argued nor shown they were
harmed.  For instance, they do not set
forth the difference in revenue promised by Donnelly versus revenue earned, nor
do they show that Urban Retreat’s revenue suffered because of Donnelly’s
assistance in creating a competing salon.

            Because (1) Donnelly’s alleged unclean
hands involve contract—a separate issue — and (2) appellants have not shown
harm, the trial court did not abuse its discretion in disregarding appellants’
argument of “unclean hands.” 
Accordingly, we overrule issue 22 and the second portion of Urban Retreat’s
issue six.

                                                                     D.  Laches

            In the remainder of issue six, Urban
Retreat argues that Donnelly’s claim for equitable relief is barred by laches.  There are
two essential elements of laches:  “(1) unreasonable delay by one having legal
or equitable rights in asserting them; and (2) a good faith change of position
by another to his detriment because of the delay.”  Rogers v. Ricane Enter., Inc., 772
S.W.2d 76, 80 (Tex.
1989).  Extraordinary circumstances,
which would work a grave injustice, must exist before laches
bars a suit filed within the limitations period.  Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex. 1998).

            Urban Retreat argues that it has
been prejudiced because memories have faded over time.  However, fading memory “is one of the policy
reasons behind the statute of limitations.” 
Wakefield v. Bevly,
704 S.W.2d 339, 345 (Tex. App.—Corpus Christi 1985, no writ).  Faded memory does not establish laches in a suit filed before the statute of limitations
has expired.  Id.  The case cited by Urban Retreat, Fazakerly v. Fazakerly,
996 S.W.2d 260, 265 (Tex. App.—Eastland 1999, pet. denied), is
distinguishable.  It involved a
daughter’s challenge to her father and stepmother’s antenuptial
agreement after expiration of the statute of limitations; 25 years after the
agreement was signed; eight years after the father’s death; and after the
stepmother became incapacitated by Alzheimer’s.   In contrast, in this case, the statute of
limitations did not expire, and the essential parties are alive and
competent.  Further, Urban Retreat has
not identified its good faith but detrimental change in position due to
Donnelly’s delay in filing suit.  See Rogers, 772
S.W.2d at 80.  For these two reasons, we
overrule Urban Retreat’s assertion of laches.  We overrule Urban Retreat’s issue six. 

                                                                    Damages

            In their twenty-third,
twenty-fourth, and twenty-fifth issues, the Willises
contend that the trial court improperly instructed the jury about the measure
of damages for breach of contract and breach of fiduciary duty and improperly
“stacked” the damages, which permitted a triple recovery.  Urban Retreat urges these same issues in
points of error eight, nine, and ten.

                                                 A.  Breach of Contract Damages

            First, appellants argue that the
trial court submitted the wrong measure of damages for breach of contract to
the jury.  The jury awarded $1,707,684.30
in damages for unpaid salary and for stock value using the equation found in
the Letter Agreement’s “Other Matters Relating to Shares.”  We agree that the jury considered the wrong
measure of damages for the stock value, although we disagree with the measure
of damages urged by appellants. 

            “Damages must be measured by a legal
standard, and that standard must be used to guide the fact finder in
determining what sum would compensate the injured party.”  Allied
Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.]
1999, pet. denied).  The proper measure
of damages is a question of law.  Id.   In the jury charge, the trial court
instructed the jury to measure the value of Donnelly’s shares under a provision
in the Letter Agreement entitled “Other Matters Relating to Shares.”  The Letter Agreement contains two provisions
about share valuation, one under the heading “Termination” and the other under
“Other Matters Relating to Shares.”  The
“Termination” provision requires Donnelly to sell his shares back if his
employment terminates after 12 months.[22]  Under the “Termination” provision, share
value equals the greater of (a) assets minus liabilities or (b) two times
previous year’s earnings.  Using this
provision, Donnelly’s shares are valueless because Urban Retreat’s liabilities
and costs have always outstripped its tangible assets and revenue.  Appellants urge that this provision should be
used as the measure of damages because Donnelly was terminated.

            In contrast, the shares have value
if the provision in “Other Matters Relating to Shares” applies.  Under that provision, share value equals the
market value of the real estate plus the previous 12 months’ gross revenue.[23]  Thus, Urban Retreat’s debts would not be
considered.  However, the plain language
of the Letter Agreement reveals that “Other Matters Related to Shares” is
activated only in two situations: (1) when a shareholder exercises a right of
first refusal and (2) in an exchange of stock if multiple “Urban Retreat
companies” combine.

            The parties simply disagree
regarding which of the two provisions should be used to value the shares.  However, neither of the two is a liquidated
damages provision applicable in the event of breach of contract.  See LaFarge Corp. v. Wolff, Inc., 977 S.W.2d 181, 188 n.13
(Tex. App.—Austin 1998, pet. denied). 
Although parties may stipulate the amount of damages to be recovered in
the event of breach of contract, “[s]uch an agreement
. . . must be expressed, and in the absence of an express agreement for
liquidated damages the court will not make one for the parties.”  Id.; see also Newsome v. State, 922 S.W.2d
274, 281 (Tex. App.—Austin 1996, writ denied) (“Damages become ‘liquidated’
when the parties have agreed to the
amount at issue.”).  In the absence of an
express agreement for liquidated damages, courts apply a common-law measure of
damages for breach of contract.  See General Elec. Supply Co. v. Gulf Electroquip, Inc., 857 S.W.2d 591, 599 (Tex.
App.—Houston [1st Dist.] 1993, writ denied) . 


            Further, appellants cannot take
advantage of provisions favorable to them in the very contract they
breached.  See Baker Marine Corp. v. Weatherby Eng’g Co., 710 S.W.2d 690, 696 (Tex. App.—Corpus
Christi 1986, no writ).  One who has
broken a contract cannot thereafter enforce the remaining terms.  See
Joseph v. PPG Indus., Inc., 674 S.W.2d 862, 867 (Tex. App.—Austin 1984,
writ ref’d n.r.e.); accord II Deerfield Ltd. P’ship
v. Henry Bldg., Inc., 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet.
denied); Interceramics, Inc. v. S. Orient R.R. Co., 999 S.W.2d
920, 924 (Tex. App.—Texarkana 1999, pet. denied).  Having breached the contract, appellants
cannot then enforce the Termination provision as though it were a liquidated
damages clause or the common-law measure of damages, which it is not.  

            In a breach of contract action for
failure to transfer shares of a closely held corporation, “[t]he proper measure
of damages is the fair market value of the stock . . . .”  See Bowers Steel, Inc. v. DeBrooke, 557 S.W.2d 369, 373 (Tex. Civ.
App.—San Antonio 1977, no writ) (employee was promised 20% of stock in closely
held corporation, but never received it); see
also Miga v. Jensen, 96 S.W.3d 207, 215 (Tex. 2003)
(in breach of agreement to purchase securities, damages are the difference
between the contract price and the fair market value of the asset).  Market value of closed-corporate stock is
what a willing purchaser would pay to a willing seller under no compulsion to
sell.  InterFirst Bank Dallas, N.A. v. Risser, 739 S.W.2d
882, 889 (Tex. App.—Texarkana 1987, no writ); accord Fisher v. Yates,
953 S.W.2d 370, 378 (Tex. App.—Texarkana 1997), writ denied per curiam, 988 S.W.2d 730 (Tex. 1998); see also City of Harlingen v. Estate of Sharboneau, 48 S.W.3d
177, 182 (Tex. 2001)
(measure of damages in condemnation). 
Book value “is entitled to little, if any, weight in determining the
value of a corporation’s stock, and many other factors must be taken into consideration.”  Bendalin v. Delgado,
406 S.W.2d 897, 900-01 (Tex. 1966); accord Pabich v. Kellar, 71 S.W.3d 500, 509 (Tex.
App.—Fort Worth 2002, pet. denied); McRae
Exploration & Prod. Co., Inc. v. Reserve Petroleum Co., 962 S.W.2d 676
(Tex. App.—Waco 1998, no pet.).  When too
few stock sales exist to establish a market price, other factors to assess fair
market value include:

 

 class=Section10>

(a) The nature of the business and the history of
the enterprise from its inception.  

(b) The economic outlook in general and the condition
and outlook of the specific industry in particular.  

(c)
The book value of the stock and the financial condition of the business.  

(d) The earning capacity of the company.  

(e) The dividend paying capacity.  

(f) Whether or not the enterprise has good will or
other intangible values.[24]  

(g) Sales of stock and the size of the block of the
stock to be valued.  

(h) The
market price of stocks of corporations engaged in the same or similar line of
business having their stocks actively traded in a free and open market, either
on an exchange or over-the-counter.

 

 class=Section11>

InterFirst Bank Dallas, 739 S.W.2d at 892 (citing Rev. Rul. 59–60, 1951-1 C.B. 237).  If there is no evidence of fair market value,
the value of stock in a closely held corporation is predicated upon the market
value of the assets of the company after deducting its liabilities.  See
Williams v. Gaines, 943 S.W.2d 185, 193 (Tex. App.—Amarillo 1997, writ
denied) (op. on reh’g).

            Regardless, the calculation should
reflect the value at the time of injury. 
See Bendalin,
406 S.W.2d at 901; Pabich,
71 S.W.3d at 509; Williams, 943
S.W.2d at 193–94; Intermedics, Inc. v. Grady, 683 S.W.2d 842, 848
(Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.) (employee entitled to stock’s value at time of his
termination from employment); Bowers
Steel, Inc., 557 S.W.2d at 373 (stock promised to employee as compensation
was valued at time of termination); see
also Miga,
96 S.W.3d at 214 (explaining long-standing rule in Texas that
contract damages are measured at the time of breach).  In this case, appellants clearly repudiated
the Letter Agreement in November 1994, which is coincidentally the date of
Donnelly’s termination.  Donnelly is thus
entitled to damages because of appellants’ wrongful breach of the Letter Agreement,
not because he was terminated in accordance with the Termination provision.

            We hold that the correct measure of
damages is the fair market value of the stock in URB and in WHE at the time of
Donnelly’s termination in November 1994. 
Accordingly, the trial court erred in submitting the wrong measure of
damages.  When a trial court erroneously
instructs the jury on the measure of damages, the submission is reversible
error.  See Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d
812, 817 (Tex. 1997).  When a defective damages question is
submitted, the proper remedy is to remand for new trial.  See
Jackson v. Fontaine’s Clinics, Inc.,
499 S.W.2d 87, 90 (Tex.
1973).  The rules of appellate procedure
do not permit a new trial solely on unliquidated
damages if liability is contested.  Tex. R. App. P. 44.1(b).  Accordingly, we reverse and remand for a new
trial on Donnelly’s cause of action for breach of contract.[25] 

                                           B.  Breach of Fiduciary Duty Damages

            In the Willises’
issue 24 and Urban Retreat’s issue nine, appellants contend that the trial
court erred in omitting a measure of damages in the breach of fiduciary duty
question.  In Question 25, the court
asked the jury, “What sum of money, if any, if paid now in cash, would fairly
and reasonably compensate Dan Donnelly for his damages, if any, that were
proximately caused by such conduct [Mike Willis’s breach of fiduciary duty]?”
The court, however, did not instruct the jury on what items to consider in
assessing damages.  

            “[W]hen the trial court has
erroneously failed to include instructions on the proper measure of damages, it
is the complaining party’s burden both to object to the charge and to tender
such instructions in substantially correct form.”  Tex.
Commerce Bank v. Lebco Constructors, Inc., 865
S.W.2d 68, 75 (Tex. App.—Corpus Christi 1993, writ denied); see Tex.
R. Civ. P. 278; accord R&R Contractors v.
Torres, 88 S.W.3d 685, 695 (Tex. App.—Corpus Christi 2002, no pet.); Campbell v. C.D. Payne & Geldermann Sec., Inc., 894 S.W.2d 411, 420 (Tex.
App.—Amarillo 1995, writ denied); Gilgon, Inc. v. Hart,
893 S.W.2d 562, 565 (Tex. App.—Corpus Christi 1994, writ denied).[26]  

            Although appellants objected, they
failed to tender an instruction in substantially correct form.  Their proposed measure of damages was the
“Termination” provision from the Letter Agreement, which would limit damages
for breach of fiduciary duty to stock value calculated at the greater of (1)
assets minus liabilities or (2) two times the prior year’s earnings.  However, Donnelly presented evidence that
Willis’s purchase of the URB realty and his characterization of capital
contributions as loans were breaches of fiduciary duty.  Appellants’ proposed measure of damages would
exclude consideration of realty value and the amount of money mischaracterized
as loans.  Thus, assuming that Question
25 was deficient,[27]
appellants have waived error by failing to tender an instruction on the correct
measure of damages.  See Miller v. Kendall, 804 S.W.2d 933, 942 (Tex. App.—Houston [1st
Dist.] 1990, no writ) (complaining party waived error by tendering instruction
with incorrect measure of damages). 
Accordingly, we overrule the Willises’ issue
24 and Urban Retreat’s issue nine.

                                                                   C.  Stacking

            In the Willises’
twenty-fifth issue and Urban Retreat’s tenth issue, appellants contend that the
trial court erroneously stacked the damages, permitting a triple recovery.  First, they contend that the jury awarded the
same amount of money for breach of contract and breach of fiduciary duty, which
constitute a single injury.  They then
contend that the trial court tripled the recovery by imposing a constructive
trust.  

            “A double recovery exists when a
plaintiff obtains more than one recovery for the same injury.”  Waite
Hill Servs., Inc. v. World Class Metal Works, Inc.,
959 S.W.2d 182, 184 (Tex.
1998).  Here, the jury awarded the same
amount of money for both breach of contract and breach of fiduciary duty.  Appellants contend that these awards, along
with Donnelly’s jury arguments, prove that he has suffered but one injury.  However, we have reversed and remanded the
breach of contract claim.  Thus, there is
no double recovery of identical amounts for both causes of action.  Additionally, when a plaintiff pleads
alternate theories of liability, a judgment awarding damages on more than one
theory may stand if the theories of liability arise from separate and distinct
injuries and separate and distinct damage findings are entered on each theory
of liability.  See Birchfield v. Texarkana Mem’l Hosp., 747 S.W.2d
361, 367 (Tex.
1987).  There is evidence supporting
damages for two “separate and distinct” causes of action in this case: (1)
unpaid salary and stock value for breach of the Letter Agreement; and (2) real
estate value and capital contributions listed as loans for breach of fiduciary
duty.  Real estate value and “loans”
should not be considered in determining breach of contract damages. 

            Lastly, appellants argue that the
constructive trust triples Donnelly’s recovery. 
Donnelly concedes that the constructive trust duplicates the money
judgment and seeks remand for an election of remedies.  “A party who seeks redress under two or more
theories of recovery for a single wrong must elect, before the judgment is
rendered, under which remedy he wishes the court to enter judgment.”  Star
Houston, Inc. v. Shevack, 886 S.W.2d 414, 422
(Tex. App.—Houston [1st Dist.] 1994), writ
denied per curiam, 907 S.W.2d 452 (Tex.
1995).  If the prevailing party fails to
elect a remedy, the trial court should render a judgment affording the greater
recovery.  Pitman v. Lightfoot, 937 S.W.2d 496, 533 (Tex. App.—San Antonio
1996, writ denied).  If the trial court
fails to do so, generally, we will reform the judgment to effect such an
election.  See id.  

            However, appellate courts sometimes
remand a case for an election of remedies. 
See, e.g., Waite Hill Servs.,
959 S.W.2d at 185; Gunn Infiniti, Inc. v.
O’Byrne, 18 S.W.3d 715, 718 (Tex. App.—San Antonio 2000, no pet.); Jim Walter Homes, Inc. v. Samuel, 701
S.W.2d 351, 354 (Tex. App.—Beaumont 1986, no writ).  We remand the constructive trust in this case
for two reasons.  First, the portion of
the constructive trust imposed upon 50% of URB stock and 10% of WHE stock
duplicates recovery for breach of contract, which we have reversed and
remanded.  Thus, the constructive trust
on the URB and WHE stock is also reversed and remanded.  Second, 
we are unable to determine which remedy for breach of fiduciary duty
(the money damages or the constructive trust on the realty) provides a greater
recovery.  Accordingly, we remand for an
election of remedies for breach of fiduciary duty.

            In summary, we overrule the Willises’ issue 25 and Urban Retreat’s issue ten to the
extent appellants contend fiduciary duty damages are the same as contract damages.  We partially sustain the issues as
follows.  First, we reverse and remand
the constructive trust imposed on Urban Retreat stock because it duplicates
damages for breach of contract, which we have reversed and remanded for a new
trial.  Second, we remand the
constructive trust imposed on the realty for an election of remedies because it
duplicates money damages awarded for breach of fiduciary duty. 

Attorney’s Fees

 

A.  Fees Awarded to Donnelly

 

            In the Willises’
issue 26 and a portion of Urban Retreat’s issue four, appellants contend that
Donnelly was not entitled to attorney’s fees. 
In the Willises’ issue 27 and the remainder of
Urban Retreat’s issue four, they argue that Donnelly failed to properly present
his claim, timely disclose expert opinions regarding the fees, and offer
evidence about a reasonable fee.  

            Donnelly was awarded attorney’s fees
in conjunction with his breach of contract claim.  Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997)
(permitting attorney’s fees for a “valid” claim on a contract).  Because we have reversed and remanded the
contract claim, Donnelly has no longer proved a “valid” contract claim.  See
Wright Way Const. Co., Inc. v. Harlingen Mall Co., 799 S.W.2d 415, 425
(Tex. App.—Corpus Christi 1990, writ denied); Hartford Cas. Ins. Co. v. Budget
Rent-A-Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ
denied) (attorney’s fees not recoverable for claims on which a party does not
prevail).  Additionally, Donnelly may not
recover attorney’s fees for his breach of fiduciary duty claim.  See Maeberry v. Gayle, 955 S.W.2d 875, 881 (Tex.
App.—Corpus Christi 1997, no pet.); Spangler
v. Jones, 861 S.W.2d 392, 397 (Tex. App.—Dallas 1993, writ denied).  Accordingly, we sustain the Willises’ issue 26 and the first portion of Urban Retreat’s
issue four.  We reverse and remand the
attorney’s fees issue.  Because of this
disposition, we need not address issue 27 or the remainder of Urban Retreat’s
issue four.




B.  Fees Awarded to Mike Willis

            In his cross-appeal, Donnelly
contends in two issues that the trial court erred in awarding Mike Willis
$400,000 in attorney’s fees for a $26,982.58 defaulted promissory note.  Donnelly complains that the attorney’s fees
were not segregated and thus include the costs of defending his suit against
Urban Retreat and the Willises.  “One of the thorniest and most frequently
litigated issues involved in proof of attorney’s fees concerns segregation of
recoverable fees.”  Scott A. Brister, Proof of Attorney’s Fees in Texas, 24 St. Mary’s L. J. 313, 342 (1993).  We agree that the attorney’s fees awarded to
Mike Willis were not properly segregated, and we reverse and remand the issue.

            In his first cross-issue, Donnelly
argues the trial court erred in overruling his objections to Question 4, in
which the trial court asked the jury to determine Willis’s reasonable
attorney’s fees “in this case.”[28]  We interpret Donnelly’s briefing to contend
that the trial court erred in awarding Mike Willis fees for all the legal work performed in the lawsuit,
including defense of Donnelly’s counterclaims involving the Letter Agreement
and Urban Retreat, and including fees incurred by Francie
and Urban Retreat (who were not parties to the promissory note).  In other words, Donnelly argues that Willis
failed to segregate the attorney’s fees related to his successful recovery on
the promissory note, which was the sole basis for his entitlement to an award
of attorney’s fees.  We agree.

            We review such a claim of jury
charge error for abuse of discretion.  Tex. Dept. of Human Servs. v.
E.B., 802 S.W.2d 647, 649 (Tex. 1990); KPH Consolidation, Inc. v. Romero, 102
S.W.3d 135, 156 (Tex. App.—Houston [14th
Dist.], 2003, no pet. h.).  The trial
court has broad discretion in submitting the jury charge; it abuses its
discretion only when it acts unreasonably or arbitrarily, or without reference
to any guiding principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241–42 (Tex.
1985).  We may not reverse for jury
charge error unless the error, when viewed in light of the totality of the
circumstances, amounted to such a denial of the rights of the complaining party
as was reasonably calculated and probably did cause rendition of an improper
judgment.  Tex. R. App. P. 44.1(a)(1). 
Our analysis must consider the pleadings of the parties, the evidence
presented at trial, and the charge in its entirety.  Island
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass’n, 710
S.W.2d 551, 555 (Tex.
1986).  Absent a showing of an abuse of
discretion, the award or failure to award fees will not be disturbed on
appeal.  See, e.g., Houston Lighting & Power Co. v. Dickinson Indep. Sch.
Dist., 641 S.W.2d 302, 311 (Tex. App.—Houston [14th Dist.] 1982,
writ ref’d n.r.e.); Fowler v. Stone, 600 S.W.2d 351, 353
(Tex. Civ. App.—Houston [14th Dist.] 1980, no writ).

            Whether attorney’s fees are
authorized in a particular case is a question of law to be determined by the
court.  Holland v. Wal-Mart Stores, 1 S.W.3d 91,
94 (Tex. 1999); Leon Ltd. v. Albuquerque Commons P’ship, 862 S.W.2d 693, 708 (Tex. App.—El Paso 1993, no
writ).  The Texas Supreme Court has
consistently held that “a prevailing party cannot recover attorney’s fees from
an opposing party unless permitted by statute or by contract between the
parties.”  Holland, 1 S.W.3d
at 95.  A party may not recover
attorney’s fees for claims on which the party did not prevail.  Budget
Rent-A-Car Sys., Inc., 796 S.W.2d at 772.

            As a general rule, the party seeking
to recover attorney’s fees carries the burden of proof.  Stewart
Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991); Lesikar v. Rappeport,
33 S.W.3d 282, 317 (Tex. App.—Texarkana 2000, pet. denied).  Specifically, when a lawsuit involves
multiple claims or multiple parties, the proponent has a duty to segregate
non-recoverable fees from recoverable fees, and to segregate the fees owed by
different parties.  Sterling, 822
S.W.2d at 10–11.  As a result, the fees
incurred for successful prosecution of a breach of contract claim must be
segregated from those claims in the case for which attorney’s fees may not be
recovered.  Id. at 11 (remanding for segregation of
attorney’s fees attributable to recovering policy benefits among various
defendants); Int’l Sec. Life Ins. Co. v. Finck, 496 S.W.2d 544, 546–47 (Tex. 1973) (remanding for
segregation of attorney’s fees incurred for fraud and deceit claims from
recovery on policy claim); Z.A.O., Inc.
v. Yarbrough Drive Ctr. J.V., 50 S.W.3d 531, 550–51 (Tex. App.—El Paso
2001, no pet.) (remanding for segregation of attorney’s fees for prosecuting
trespass and nuisance claims from contract claim). 

            In the absence of segregation, a
trial court may refuse to award attorney’s fees.  See  S. Concrete Co. v. Metrotec
Fin., Inc., 775 S.W.2d 446, 450 (Tex. App.—Dallas 1989, no writ); Bullock v. Kehoe, 678 S.W.2d 558, 560
(Tex. App.—Houston [14th
Dist.]  1984, writ ref’d
n.r.e.).  “But
when the claims ‘are dependent upon the same set of facts or circumstances and
thus are “intertwined to the point of being inseparable,” the party suing for
attorney’s fees may recover the entire amount covering all claims.’”  Stewart
Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997) (quoting Sterling, 822 S.W.2d at 11);  accord  Village Mobile Homes, Inc. v. Porter, 716
S.W.2d 543, 552 (Tex. App.—Austin 1986, writ ref’d)
(fraud, contract, DTPA, and insurance code claims arose from same set of
facts).  In other words, segregation of
attorney’s fees is not required where the services rendered relate to (1)
multiple claims arising out of the same facts or transaction and (2) the
prosecution or defense entails proof or denial of essentially the same facts,
so as to render the attorney’s fees inseparable.  See
Sterling, 822 S.W.2d at 11; Flint
& Assocs. v. Intercont’l Pipe & Steel, Inc.,
739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied) (claim and
counterclaim arose out of same transaction — the sale of pipe).  The determination of the amount to be awarded
as a reasonable attorney’s fee is a question of fact to be determined by the trier of fact and the award, if any, must be supported by
competent evidence.  Great Am. Reserve Ins. Co. v. Britton, 406 S.W.2d 901, 907 (Tex. 1966). 

            Originally, Mike Willis sued Dan
Donnelly for the balance owing on a $31,183.70 promissory note.  The loan was made between the men in 1993,
several years after Urban Retreat opened. 
The loan proceeds were for Donnelly’s personal use; he asserted
affirmative defenses to recovery on the note and a usury counterclaim, the
facts of which were unrelated to the business of Urban Retreat or the Letter
Agreement.  Donnelly stopped paying the
note when he was terminated from Urban Retreat in 1994.  The jury found he owed the balance of
$26,982.58.  Mike Willis successfully
overcame affirmative defenses to the promissory note and the usury counterclaim.

            Donnelly’s claims for breach of the
Letter Agreement, breach of fiduciary duty, fraud in the inducement, and tortious interference against Willis, Francie,
WHE, and URB all involved the Urban Retreat business.  Most of the copious discovery and trial
evidence addressed these claims, not the promissory note.  Donnelly’s claims against the Willises and Urban Retreat did not involve the creation,
execution, and non-payment of the promissory note.  The promissory note arose from a separate
transaction.  Prosecution and defense of
the promissory note did not require proof or denial of essentially the same
facts.   The only similarity of facts is
that Willis and Donnelly were parties to both. 


            Because Mike Willis prevailed at
trial to recover the balance of the promissory note, attorney’s fees are
authorized for prosecuting that claim.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon
1997).  However, this statute does not
authorize recovery of attorney’s fees for a party’s defense of breach of contract, fraudulent inducement, tortious interference, or breach of fiduciary duty
claims.  Id.  There is no authority that entitles Willis to
recover attorney’s fees for his defense of Donnelly’s breach of the Letter
Agreement, breach of fiduciary duty, tortious
interference, and fraud in the inducement counterclaims.

            Willis relies upon the case of RepublicBank Dallas v. 
Shook, 653 S.W.2d 278 (Tex. 1983), in
arguing he should be awarded attorney’s fees for defending all of Donnelly’s
claims.  He asserts that his defense of
them was inseparable from prosecuting his claim against Donnelly on the
promissory note.  In RepublicBank, because the facts
were so integrally related, the prevailing party suing on a promissory note was
entitled to recover attorney’s fees for successfully defending a usury claim
and overcoming affirmative defenses to the note’s collection.  We agree that Willis is entitled to recover
those attorney’s fees incurred in defeating Donnelly’s affirmative defenses to
the promissory note and overcoming the usury counterclaim.  However, in urging the application RepublicBank,
Willis glaringly fails to acknowledge the existence of Donnelly’s other
counterclaims, i.e., the claims
relating to Urban Retreat and the Letter Agreement.

            At trial, Willis was not seeking to
recover only his attorney’s fees on the promissory note and the usury
counterclaim.  Instead, the jury question
asked: “What is a reasonable fee for the necessary service of Mike Willis’s attorneys
in this case, stated in dollars and
cents?”  The question failed to limit
recovery only for attorney’s fees Mike Willis incurred in prosecuting the note,
overcoming defenses to it, and defeating Donnelly’s usury counterclaim, which
was the sole counterclaim inextricably related to the promissory note.  RepublicBank is thus not support for Willis’s assertion
that, as a matter of law, all of Donnelly’s counterclaims were so intertwined
with the promissory note as to allow recovery of attorney’s fees for the whole
case.  

            Willis next argues that the expert
testimony of Finis Cowan supports recovery of total attorney’s fees.  We have reviewed this witness’s
testimony.  Although he testified that he
considered RepublicBank
in arriving at his opinion, this is insufficient to demonstrate that the facts
surrounding Willis’s recovery on the promissory note were integrally related to
Donnelly’s other claims against the Willises and
Urban Retreat.  It was Mike Willis’s
burden to present evidence segregating the attorney’s fees and he failed to do
so.

            Accordingly, we sustain Donnelly’s
cross-issue one.  Question 4 was
erroneous because it did not properly limit recovery and because there was no
evidence of segregated fees.[29]  Because the determination of reasonable
attorney’s fees is a question for the trier of fact,
we remand the attorney’s fees issue for determination of what portion of the
$400,000 in attorney’s fees is attributable to the successful prosecution of
Mike Willis’s claim on the promissory note and defense of the usury
counterclaim.  See Stewart Title, 822 S.W.2d at 12; Aetna Cas. & Sur. v.
Wild, 944 S.W.2d 37, 41 (Tex. App.—Amarillo 1997, writ
denied).  The jury cannot award
attorney’s fees to Mike Willis for fees incurred by WHE, URB, Francie, or Willis in defending Donnelly’s claims for
breach of fiduciary duty, tortious interference,
fraud in the inducement, and breach of the Letter Agreement.  Lastly, as a result of our disposition of
cross-issue one, we need not address Donnelly’s second cross-issue.

                                                                Conclusion

            In summary, we affirm the judgment
against Mike Willis for breach of fiduciary duty.  However, the constructive trust awards a
double recovery for breach of fiduciary duty. 
We therefore remand for an election of remedies between the constructive
trust on the realty and the $1.7 million awarded by the jury for breach of
fiduciary duty.  

            Next, we overrule the Willises and Urban Retreat’s challenges to liability for
breach of contract.  We further hold that
the statute of limitations for breach of contract did not accrue before August 24, 1991.  However, the jury charge contained an
incorrect measure of damages for breach of contract.  Accordingly, we reverse and remand for a new
trial on contract damages.  Because we
are reversing and remanding the damages issue, we also reverse and remand the
portion of the constructive trust imposed on URB and WHE stock, which
duplicates contract damages.  As a
consequence of the new trial on contract damages, we must also reverse and
remand the contract liability issues, found in Questions 5, 6, 8, 9, and
10.  Finally, because Donnelly is no
longer a prevailing party, we reverse and remand the attorney’s fees awarded to
him on his breach of contract claim.

            In Donnelly’s cross-appeal, we hold
that the trial court erred in permitting the jury to consider unsegregated attorney’s fees incurred by the Willises and Urban Retreat, instead of those incurred
solely by Mike Willis in prosecuting Donnelly for defaulting on a promissory
note and prevailing on Donnelly’s usury counterclaim.

            Accordingly, we affirm the judgment
for breach of fiduciary duty, remand for an election of remedies consistent
with this opinion, reverse and remand all breach of contract issues, except the
limitations question, reverse and remand the award of attorney’s fees to Donnelly,
and reverse and remand the award of attorney’s fees to Mike Willis. 

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and Opinion filed
June 19, 2003.

Panel consists of Justices Yates,
Seymore, and Guzman.

 











            [1]  Collectively, we refer to URB and WHE as Urban
Retreat.





            [2]  This “loan” was not approved by resolution of URB’s board of directors, as required by the URB
by-laws.  In contrast, the $800,000
construction loan had been approved by the board (consisting of Willis, the
minimal shareholder, and Hite).





            [3]  By terminating his employment so quickly, Hite never
earned 25% of URB stock as contemplated in his own letter agreement with
Willis.





            [4]  URB was authorized to issue up to 100,000 shares.





            [5]  From 5% of gross revenues to $3,000 per month, 60% of
his hair styling, 10% of his product sales, and a 5% commission each month the
Hair Department exceeded $100,000 in revenue.





            [6]  By 1992’s end, Willis’s cash loans equaled
$1,746,643.  At 1993’s end, this amount
had increased to $1,897,896. 





            [7]  Again, no evidence exists that URB’s
board of directors approved this “evidence of indebtedness . . . issued in its
name” as required by the by-laws. 
Supposedly, Willis, Francie, Donnelly, and two
others were board members until March 17,
 1993, when Francie, as “sole
shareholder,” made herself sole director.





            [8]  Question 6: “Was the failure to comply [with the
Letter Agreement] excused?  Failure to
comply with an agreement is excused . . . 
if compliance was waived by Dan Donnelly.  A waiver is an intentional surrender of a
known right or intentional conduct inconsistent with that right.”  The jury answered, “No.”  





            [9]  Question 7: “Did the failure to comply . . . occur
prior to August 24,
 1991?” 





            [10]  Nine other notes from the jury, and the trial court’s
responses, do appear in the clerk’s record.





            [11]  In Question 22, the trial court instructed the jury,
“Mike Willis owed Dan Donnelly a fiduciary duty.”





            [12]  “Oppressive conduct” is defined as:

 

1.  majority shareholders’ conduct that
substantially defeats the minority’s expectations that, objectively viewed,
were both reasonable under the circumstances and central to the minority
shareholder’s decision to join the venture; 
or

 

2.  burdensome, harsh, or wrongful conduct; a
lack of probity and fair dealing in the company’s affairs to the prejudice of
some members; or a visible departure from the standards of fair dealing and a
violation of fair play on which each shareholder is entitled to rely.  

Willis v. Bydalek, 997
S.W.2d 798, 801 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).





            [13]  The Willises argued that URB
could not afford to buy the realty, although evidence suggests that Willis’s
improper characterization of capital as debt helped place the business in its
allegedly poor financial condition. 





            [14]  Under the Letter Agreement, Donnelly could sell his
stock but first had to offer to sell them to other shareholders using the
equation “real estate appraised at market value plus previous twelve months’
gross revenue.”





            [15]  The Willises include a catchall,
multifarious assertion of error at the end of this portion of their argument,
contending there is “no evidence, no legally sufficient evidence, and no
factually sufficient evidence that Michael Willis had a fiduciary relationship
with Donnelly. . . .”  We are not
required to address multifarious issues. 
See State v. Interstate
Northborough P’ship, 8 S.W.3d 4, 7 n.2 (Tex.
App.—Houston [14th Dist.] 1999), rev’d on other grounds,
66 S.W.3d 213 (Tex. 2001); Shull v.
United Parcel Serv., 4 S.W.3d 46, 51 (Tex.
App.—San Antonio 1999, pet. denied). 
Factual sufficiency analysis requires us to detail the evidence relevant
to the issue and, if reversing, clearly state in what regard the contrary
evidence greatly outweighs the evidence in support of the issue.  See Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op.
on reh’g). 
Given the Willises’ bare assertion of error,
without substantive analysis, legal authority regarding factual insufficiency,
and appropriate citation to the record for factual insufficiency, see Ryan v. Abdel-Salam, 39 S.W.3d 332, 336 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied); Keever v. Finlan, 988 S.W.2d 300, 314 (Tex.
App.—Dallas 1999, pet. dism’d), we decline to perform
a review of the record and law to determine whether there is factually
insufficient evidence of a fiduciary relationship.





            [16]  It is error for a trial court to instruct a jury that
shareholders in a closely held corporation owe each other a fiduciary duty as a
matter of law.  Pabich, 71 S.W.3d at 505; Kaspar v. Thorne, 755 S.W.2d 151, 155 (Tex.
App.—Dallas 1988, no writ).





            [17]  The Texas Pattern Jury Charges includes a chapter
about fiduciary duty.  Tex. Pattern Jury Charges PJC
104.1–104.2 (2000).  PJC 104.1 asks
whether a fiduciary duty exists between parties.  In this case, no one requested PJC 104.1 in
the charge, and Willis did not object to its omission.  PJC 104.2 then asks if one party complied
with its fiduciary duty to another.  In
Question 22, the trial court tracked the language of PJC 104.2 almost word-for-word.





            [18]  Urban Retreat does not argue subissues
three and eight.





            [19]  The jury awarded $1,707,684.30 for Mike Willis’s
breach of fiduciary duty. 





            [20]  The Willises fail to brief
issue 22.  We thus address the argument
as presented in Urban Retreat’s brief.





            [21]  The Letter Agreement states that Donnelly agreed to
“use his best efforts” to persuade his entire staff and clientele to transfer
to Urban Retreat.  The Letter Agreement
also states that while employed at Urban Retreat, Donnelly may not compete in
the Houston area by
performing “personal care, beauty, and hair” services or owning an interest in
a competing business.





            [22]  “After twelve (12) months of employment, if Mr.
Donnelly is terminated, Mr. Donnelly would likewise be required to sell his shares
of the Urban Retreat and Willis/Hite to those companies and would receive book
value of such shares or the value of such shares as determined by multiplying
two times prior year’s earnings. . ., whichever is greater.  ‘Book Value’ is defined as the assets minus
liabilities. . . .”





            [23]  “Book Value of Owners’ Equity = Real Estate Appraised
at Market Value Plus Previous Twelve (12) Months Gross Revenues.”





            [24]  Per the Letter Agreement, WHE owns “all rights to the
name ‘The Urban Retreat.’” WHE’s ownership of the
name is confirmed in a “URH/URC Contract.” 
The evidence does not reveal whether WHE had liabilities or other assets
when Donnelly’s employment terminated. 





            [25]  Under Rule 44.1(b), we remand the portion of the
matter in controversy that is affected by the error and that is fairly
separable.  Accordingly, we remand
Question 5 (the breach of contract question), Question 6 (whether the failure
to comply was excused), Question 8 (the percentage of URB stock to which
Donnelly was entitled), Question 9 (the percentage of WHE stock to which
Donnelly was entitled), Question 10 (ratification), and Question 11 (damages
incurred for breach of contract). 





            [26]  When a measure of damages is omitted, the complaining
party must request the correct measure.  Tex. R. Civ. P. 278;
see Fairfield Estates, L.P. v. Griffin, 986
S.W.2d 719, 724 (Tex. App.—Eastland 1999, no pet.).  When an incorrect measure is submitted, i.e., a defective submission, the
complaining party need only object.  See Religious of the Sacred Heart v. City of
Houston, 836 S.W.2d 606, 613–14 (Tex. 1992); R&R Contractors, 88 S.W.3d at 695; see also Operation
Rescue-Nat’l v. Planned Parenthood of Houston & S.E. Tex., Inc., 937
S.W.2d 60, 69 (Tex. App.—Houston [14th Dist.] 1997), aff’d as modified, 975 S.W.2d 546 (Tex. 1998).





            [27]  But see
Rowe v. Rowe, 887 S.W.2d 191, 199 (Tex. App.—Fort Worth 1994, writ
denied) (almost identical question held to be proper under Texas law when
challenged for improper measure of damages).





            [28]  Donnelly objected that in answering Question 4, the
jury was not limited to assessing attorney’s fees incurred solely by Mike
Willis for only the promissory note claim. 
Donnelly also objected that there was no evidence segregating the fees.





            [29]  Donnelly does not assert points of error for legal or
factual insufficiency of the evidence. 
Even if he had done so, we could not reverse and render.  If a party does not properly segregate
attorney’s fees, it is error to completely deny recovery of attorney’s fees on
a contract claim, as evidence of unsegregated
attorney’s fees is more than a scintilla of evidence of segregated fees.  Int’l Sec.Life Ins. Co., 496 S.W.2d at 546–47; Panizo v. Young Men’s Christian Ass’n of Greater Houston Area, 938 S.W.2d 163, 171
(Tex. App.—Houston [1st Dist.] 1996, no writ).